IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>　　　　vs.<br><br>CHANNING BURGESS<br>　　　　Defendant. | Case No.  08-20062-01-CM |

## MOTION TO SUPPRESS EVIDENCE

NOW COMES Defendant, Channing Burgess, by and through counsel, Michael L. Harris and moves the Court to suppress any and all evidence seized under authority of a search warrant issued August 16, 2007 and executed at Defendant's residence on August 17, 2007.  Defendant asserts that the warrant application failed to establish probable cause that Defendant's home, and home computer would contain evidence, or fruits and instrumentalities of criminal conduct. Specifically, the warrant application established probable cause to believe that Defendant had subscribed to a member restricted web site that contained, among other things, child pornography, but failed to demonstrate either that Defendant had ever visited the site, viewed any illegal materials contained at the site, or downloaded to his home computer any such illegal materials.  In other words, probable cause with respect to Defendant specifically, was based entirely on his association with a web site that contained both legal and illegal materials.

*Statement of Facts*:

On August 16, 2007 Jim Kanatzar, a special agent with Immigration and Customs enforcement (ICE), applied for a search warrant from the Honorable David Waxse, United States

1

Magistrate, to search Defendant's residence and computer. The application included a request to seize any computer or computer related equipment for subsequent search to determine whether the computer contained visual depictions of minors engaged in sexually explicit conduct in violation of Title 18 United States Code § 2252. The warrant application is 38 pages long, and attached to this pleading. Certain information relating to addresses, phone numbers, or other identifying data are deleted pursuant local court rule, but will be addressed where necessary.

Paragraphs 4-12 of the application deal primarily with definitions, although paragraphs 9-10 deal with how computers generally have changed the ways in which child pornography is produced and distributed. For purposes of this motion, the most important of these paragraphs deal with the internet protocol address (IP address) which is defined at paragraph 12e. The IP address is a number that can be used to determine what specific computer accessed the internet at any specific time. Sunflower Broadband, Defendant's internet service provider, used static IP addresses for its customers. In other words, Sunflower Broadband assigned a specific IP address for each of its subscribers. In the case of Mr. Burgess, at the time of the warrant application, his IP address as assigned by Sunflower Broadband was 24.124.88.184. (See paragraph 27 of the warrant application)

Paragraphs 13-18 detail the investigation by immigration and Customs Enforcement of a web site known as "Home Collection". ICE agents repeatedly accessed this web site, subscribing to a variety of member restricted web sites operating under the "Home Collection" umbrella. The agent would provide payment information, this was accomplished through an "iwest" payment web site, that then linked to a PayPal account. Once the payment transaction was completed, the agent subscriber would receive an e-mail acknowledging receipt of payment.

This allowed access to the member restricted web site.

Approximately 21 member restricted web sites were accessed in this manner. Some of the web sites had names clearly associated with child pornography; such as "Spycam Lolitas" "Lolivirgins", and "Underage Home". Others were less obvious such as "Video Shop CD 1", "Home Collection", "Sexy Angels" and "Desired Angels". However, regardless of the name of the member restricted web site, apparently all of the web sites contained at least some child pornography.

Paragraphs 19-30 deal specifically with Defendant Channing Burgess. A review of PayPal account records showed that on December 18, 2006 an individual identifying himself as Channing Burgess paid a subscription for the Sexy Angels web site. The payment is for $79.95, however, it is not clear whether this was for one month, or some greater or lesser term. The IP address for the computer used in this transaction was 66.45.139.124. (See paragraph 20 of warrant application) This IP address is owned by Sunflower Broadband, but it is not alleged that the 66.45.139.124 IP address was ever assigned to Channing Burgess by Sunflower Broadband. (See paragraph 27 of warrant application)

Paragraph 22 deals specifically with the content of the Home Collection/Sexy Angels website as observed by ICE agents during the undercover investigation. Paragraph 22 states that there were "approximately 9,422 image files in the "Photos" section and approximately 186 video files. Several of the images depicted lascivious displays of the minor females' genitalia." (Warrant application at paragraph 22) Paragraph 22 does not disclose how many images are encompassed within the term "several". Nor does the application disclose what is contained in the other sections of the web site such as "news", "message board", or "software". Paragraph 22

3

does describe three of the 9,422 images found in "Photo" section and the description does describe a display of genitalia.

Further investigation with Yahoo Inc., established that Defendant Channing Burgess had an e-mail account with Yahoo that was active on December 18, 2006. Further the e-mail address was the same as listed in the PayPal account information from the December 18, 2006 transaction. Other investigation confirmed Defendant's address in Lawrence, Kansas to be the same as reflected in the PayPal transaction records. However, there is no indication that IP address 66.45.139.124 was ever assigned to Defendant at his address in Lawrence, or anywhere else. There is no information contained in the warrant application to indicate Defendant ever visited the "Home Collection/Sexy Angels" web site. There is certainly no information he ever downloaded any content from the web site, whether legal or illegal. The warrant application purports to establish probable cause based solely on his association with the web site; the proof of the association is the paid subscription dated December 18, 2006 from IP address 66.45.139.124.

Paragraphs 31-32 deal with the need to seize the computer in order to do a forensic evaluation of the computer, and are not important for purposes of this motion. Paragraph 33 deals generally with the behaviors of persons involved with "sending and receiving child pornography". There is no information submitted that suggests Defendant is within the group of people whose behaviors are generally as described.

*Argument and Authority*:

The question in this case is whether an individual's association with a particular location (the member restricted web site) where both legal and illegal activity occurs (the member

restricted web site contains both entirely legal visual images and child pornography) is enough to establish the required probable cause particularized with respect to that individual.  In *Ybarra v. Illinois*, 444 U.S. 85 (1979) the Supreme Court determined that where "the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person" 444 U.S. at page 91.  The Supreme Court also stated that "mere propinquity to others independently suspected of criminal activity, without more, give rise to probable cause to search that person."  444 U.S. at page 91.  These holdings of the *Ybarra* decision were reaffirmed by the Supreme Court in *Maryland v. Pringle*, 540 U.S. 366 (2003).

> This issue in the child pornography context has been the subject of extensive litigation primarily relating to the "Candyman" cases originating in 2001.  See *United States v. Froman*, 355 F.3d 882 (5th Cir.2002), *United States v. Coreas*, 419 F.3d 151 (2nd Cir. 2005), *United States v. Martin*, 426 F.3d 68 (2nd Cir. 2005) petition for rehearing denied, 426 F.3d 83 (2nd Cir. 2005), *United States v. Shields*, 458 F.3d (3rd Cir. 2006), *United States v. Hutto*, 84 Fed.Appx. 6, 2003WL22890954 (unpublished 10th Circuit decision dated December 9, 2003).

> The Ninth Circuit addressed this issue in the context of a subscription only web site named "Lolitagurls.com" in *United States v. Gourde* 440 F.3d 1065 (9th Cir.2006).  In the *Gourde* case, Ninth Circuit, en banc, decided that subscribing to the Lolitagurls.com web site was enough to support probable cause.  The original Ninth Circuit panel had determined the opposite.  382 F.3d 1003 (9th Cir. 2004).

> This issue has provoked sharp disagreement among some of the circuits deciding the issue; for example compare *United States v. Coreas*, 419 F.3d 151 (2nd Cir. 2005) and *United States v. Martin*, 426 F.3d 68, and 426 F.3d 83 (2nd Cir. 2005).  The *Coreas* panel flatly

concluded that the *Martin* case was wrongly decided.  419 F.3d 151 at page 159.   The Ninth Circuit en banc decision in *Gourde* had two separate dissenting opinions pointing out that other decisions upholding the Candyman warrants had individualized facts beyond mere subscription; for example, *United States v. Froman,* 355 F.3d 882 (5th Cir. 2002) included in the warrant application that Mr. Froman identified himself with aliases announcing his perverted interest in little girls, that is he used the names 'Littlebuttsue" and "Littletitgirly".

      In the Third Circuit decision in *United States v. Shields*, 458 F.3d 269 (3rd Cir. 2006), Mr Shields had registered with multiple e-mail groups using the name "LittleLolitaLove".  The Third Circuit found the use of this name very important is the probable cause analysis because it bolstered the common sense decision that  Mr. Shields used the Candyman groups to download child pornography.

      In the Ninth Circuit case, *United States v. Gourde*, 440 U.S. 1065 (9th Cir. 2006), Mr. Gourde subscribed to a web site named "Lolitagurls.com".  The first page of the site announced that the site contained hard to find pictures, and contained the images of nude and partially dressed girls, some prepubescent.  In *United States v. Martin*, 426 F.3d 68 (2nd Cir. 2005) the Second Circuit noted specifically that the e-group  "girls12-16" had a  welcome message which unabashedly announced that the site's essential purpose was to trade child pornography.  As indicated, in each case that has upheld these warrants, the application contained particularized information about the individual beyond just the subscription to the web site.

      In the case before this Court, however, the warrant application contains no such information.  The main web site name, "Home Collection" is completely innocuous. The name of the specific web site subscribed to by Defendant Channing Burgess, "Sexy Angels" has no

specifically demonstrated relationship to child pornography. As such, this case is far different than *United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) and *United States v. Martin*, 426 F.3d 68 (2nd Cir. 2005). In fact, in the opinion on the Petition for Rehearing, the *Martin* panel emphasized that the e-group "girls12-16" welcome message was an integral part of the probable cause analysis. 426 F.3d at page 86.

It is apparent from the warrant application that the "Sexy Angels" web site contained completely legal photographs as well as child pornography. The application states that the site contained 9,422 image files. It also contained a "Software " section, a "Message Board" section and a "News" section. The warrant application states only that "several" of the image files contained child pornography. (warrant application paragraph 22) It is obvious that the balance of the image files would be entirely legal, and protected by the First Amendment.

Web site message boards and chat rooms are nothing more than computer communication structures that allow people to associate with others with similar interests. Associational rights are also protected by the First Amendment, unless a "large portion of the subject organization's activities are illegitimate." *United States v. Brown* 951 F.2d 999 (9th Cir. 1991) Only when the organization can be considered wholly illegitimate does mere association with the group indicate criminal activity. *Brown, supra*, at page 1003. As Judge Logan stated in his concurring opinion in *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir. 1985):

> Nevertheless, *Zurcher v. Stanford Daily*, 436 U.S. 547....(1978), requires "scrupulous exactitude-in both particularity of description *and* in establishment of probable cause-in search cases in which the First Amendment may protect the materials sought to be seized.

774 F.2d at page 408. (Emphasis in original)

In this case, the warrant application was issued based on a single subscription payment on December 18, 2006 to a restricted web site that contained both legal and illegal content. The computer from which the subscription transaction originated had an IP address of 66.45.139.124. However, there is no demonstrated connection between Defendant's home address, and a computer with that IP address. Defendant's internet provider, Sunflower Broadband, had assigned Defendant the IP address of 24.124.88.184. The warrant application specifically requested permission to search Defendant's Lawrence, Kansas residence. (Warrant application at paragraph 2)

The restricted web site had an innocuous name, "Home Collection". The "Sexy Angels" web site name has no connotation specific to child pornography. There is no information that Channing Burgess ever accessed the web site from his home computer, or downloaded any content from the web site to his home computer. The United States Supreme Court in *Zurcher v. Stanford Daily,* 436 U.S. 347 (1977) emphasized that in the search warrant context, two conclusions must be supported by substantial evidence: (1) that the items sought are in fact subject to seizure by virtue of a connection with criminal activity; and (2) and that the items to be found are in the place to be searched. 436 U.S. at page 557 footnote 6. The warrant application here fails with respect to both.

The warrant application seeks permission to seize Defendant's computer from Defendant's home, and search the computer for child pornography. For the reasons stated herein, Defendant asserts that the warrant application fails to establish any reason to believe Defendant's home computer would contain images of child pornography. Hence, it is not subject to seizure. Further, there is no evidence whatsoever to establish that any child pornography would be found

8

in Defendant's home. As indicated herein, the computer used to subscribe to the web site in question had a different IP address than the IP address assigned to Defendant by Sunflower Broadband.

    WHEREFORE, Defendant respectfully requests the Court schedule a hearing on this matter and determine that the warrant in question was issued in violation of Defendant's Fourth Amendment rights, and suppress all evidence obtained under the warrant.

                                        Respectfully submitted,

                                        s/ Michael L. Harris
                                        MICHAEL L. HARRIS     #09925
                                        Assistant Federal Public Defender
                                        500 State Avenue, Suite 201
                                        Kansas City, Kansas 66101
                                        Telephone (913) 551-6712
                                        Fax: (913) 551-6562
                                        E-mail: mike_harris@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2008, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Kim Martin
Kim.Martin@usdoj.gov

                        s/ Michael L. Harris
                        MICHAEL L. HARRIS     #09925
                        Assistant Federal Public Defender
                        500 State Avenue, Suite 201
                        Kansas City, Kansas 66101
                        Telephone (913) 551-6712
                        Fax: (913) 551-6562
                        E-mail: mike_harris@fd.org