# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

FILED

AUG 16 2007,

DeLOACH, CLERK
Deputy

In the Matter of the Search of
premises known as,

Lawrence, Kansas 66046

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:    07-8085-DJW

I James D Kanatzar, being duly sworn depose and say:

I am a Special Agent of the Immigration and Customs Enforcement, and have reason to believe that on the property or premises known as:

, Lawrence, Kansas 66046

a three story multifamily structure containing 36 apartments which is broken into three sections with each section containing 12 apartments each. The apartment building is tan and gray in color with black shutters on each side of the apartment windows. The main entry into each section is located in the middle of each building which has a hallway and stairs. The target building has a large **"P"** attached to the building above the entry hallway. Apartment **31** is located on the second floor of building **"P"** and the apartment numbers are affixed to the building on the left side of the entry door to the apartment. The apartment building is located in the city of Lawrence, Douglas County, Kansas.

in the District of Kansas there is now concealed a certain person or property, namely:

See attachment A. Which are evidence, fruits, and instrumentalities of trafficking, receipt, distribution, and/or possession of visual depictions, and other related materials, involving minors engaging in sexually explicit conduct (child pornography), as defined in Title 18, United States Code, Section 2252.

The facts to support a finding of Probable Cause are as follows: See attached affidavit.

Continued on the attached sheet and made a part hereof.    X Yes    ☐ No

James D Kanatzar
Signature of Affiant

Sworn to before me, and subscribed in my presence **14th** day of _August_ , 2007, at Kansas City, Kansas.

0021

DAVID J. WAXSE
U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# A F F I D A V I T

I, James D Kanatzar, being first duly sworn state:

## INTRODUCTION

1. I am a Special Agent of the Immigration and Customs Enforcement currently assigned to the Office of the Resident Agent in Charge, Kansas City, Missouri and have been a federal officer for over 18 years. I have had the opportunity to conduct, coordinate and/or participate in numerous investigations relating to the sexual exploitation of children. I have also had the opportunity to observe and review numerous examples of child pornography in all forms of media including computer media, to discuss and review these materials with endocrinologists and pediatricians, and have received training and instruction from experts in the field of investigation of child pornography.

2. This affidavit is made in support of an application for a warrant to search the entire premises located at         **Street,**         , **Lawrence, Kansas 66046.** Additionally, this application is to search any computer and computer media found therein.

3. This affidavit is based upon information I have gained from my investigation, my training and experience, as well as information from Special Agents of the Immigration and Customs

1

Enforcement at the CyberSmuggling Center and conversations with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Section 2252 are located at the above address. Based upon the following information, there is probable cause to believe that currently located within the above-described premises is the evidence, fruits, and instrumentalities of trafficking, receipt, distribution, and/or possession of visual depictions, and other related materials, involving minors engaging in sexually explicit conduct (child pornography), as defined in Title 18, United States Code, Section 2256, including:

       a. Tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, CD ROM disks, DVD disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, thumb drives, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and the data within the aforesaid objects relating to said materials, which may be, or are, used to: visually depict child pornography; contain information pertaining to the interest in child pornography, or sexual activity with children; and/or distribute, receive, or possess child pornography, information pertaining to an interest in child pornography.

2

b.   Correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail.

c.   Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

d.   Originals, copies and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

e.   Motion picture films and video cassettes of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

f.   Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, offering to transmit through interstate or foreign commerce, including by United States mail or by computer, visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United states Code, Section 2256.

g.   Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, soliciting minors to engage in sexually explicit conduct for the purposes of producing child pornography as defined in Title 18, United States Code, Section 2251.

h.   Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, electronic documents and messages, describing or related to the operation of the child pornography distributors/collectors as described in the attached affidavit, as well as any envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, electronic documents and messages related to the solicitation and/or invitation for membership into

3

0024

this group.

I.    Envelopes, letters, and other correspondence, including, but not limited to, electronic mail, chat logs and electronic messages, identifying persons transmitting through interstate or foreign commerce, including by United states mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

j.    Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

k.    Address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce including by United States mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

l.    Address books, names, lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

m.    Diaries, notebooks, notes and other records reflecting personal contact and other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

n.    Materials and photographs depicting sexual conduct between adults and minors.

4

0025

o.    Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

p.    Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, handwritten notes and handwritten notes in computer manuals.

## DEFINITIONS

4.    18 U.S.C. Section 2256, et. seq. defines, for the purposes of Section 2252, the following terms:

(1)    "Minor" means any person under the age of eighteen (18) years;

(2)    "Sexually Explicit Conduct" means actual or simulated–

a)    sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

b)    bestiality;

c)    masturbation;

d)    sadistic or masochistic abuse; or

e)    lascivious exhibition of the genitals or pubic area of any person.

5

**0026**

(3) "Producing" means producing, directing, manufacturing, issuing, publishing or advertising.

(4) "Visual Depiction" includes undeveloped film and video tape.

(5) "Computer" is defined pursuant to Title 18 United States Code, Section 1030(e)(1), as: an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such a device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

5. I know that computer hardware and computer software maybe utilized to store records which include, but are not limited to, those related to business activities, criminal activities, associate names and addresses, and the identity and location of assets illegally gained through criminal activity.

6

6.  The terms "records", "documents", and "materials" include all information recorded in any form, visual or aural, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including, but not limited to the following:

    a.  Written or printed matter of any kind, correspondence, memoranda, notes, diaries, statistics, letters, telephone toll records, telegrams, contracts, reports, checks, statements, receipts, returns, summaries, pamphlets, books, ledgers, journals, registers, records, vouchers, slips, bills, calendars, pads, notebooks, files, logs, lists, bulletins, credit materials, data bases, teletypes, telefaxes, invoices, worksheets;

    b.  Graphic records or representations, photographs, slides, drawings, designs, graphs, charts, pictures, sketches, images, films, videotapes, and aural records or representations, tapes, records, disks.

7.  The terms "records", "documents", and "materials" include all of the foregoing, in whatever form and by whatever means, the records, documents, or materials, and their drafts, or their modifications that may have been created or stored, including (but not limited to):  any hand made form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as phonograph records, printing, or typing); and any electrical,

0028

electronic, or magnetic form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, CD-ROMs, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as printouts or readouts from any magnetic storage device).

8.    I am familiar with the following facts based upon my own personal observations, as well as information officially supplied to me by other law enforcement agents:

## USE OF COMPUTERS WITH CHILD PORNOGRAPHY

9.    Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  It has also revolutionized the way in which child pornography collectors interact with each other.  Child pornography formerly was produced using cameras and film (either still photography or movies.)  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images.  As a result, there were definable costs involved with the production of pornographic images.  To distribute these on any scale also required significant

8

resources.   The photographs themselves were somewhat bulky and

required secure storage to prevent their exposure to the public.

The distribution of these wares was accomplished through a

combination of personal contact, mailings, and telephone calls.

Any reimbursement would follow these same paths.


    10.   The development of computers has added to the

methods used by child pornography collectors to interact with and

sexually exploit children.   Computers serve four functions in

connection with child pornography.   These are: production,

communication, distribution, and storage.

    a.    Pornographers can now produce both still and
moving images directly from a common video camera.   The camera is
attached, using a cable, directly to the computer using a device
called a video capture board.   This device turns the video output
into a form that is usable by computer programs.   The output of
the video camera can be stored, manipulated, transferred or
printed directly from the computer.   The captured image can be
edited in very similar ways to a photograph.   The image can be
lightened, darkened, cropped, and manipulated in a wide variety
of ways.   The producers of child pornography can also use a
device known as a scanner to transfer photographs into a
computer-readable format.   As a result of this technology, it is
relatively inexpensive and technically easy to produce, store and
distribute child pornography.   There is the added benefit to the
pornographer that this method of production does not leave as
large a trail for law enforcement to follow as have been used in
the past.

    b.    Previously, child pornography collectors had to
rely on personal contact, U.S. mail, and telephonic
communications in order to sell, trade or market pornography.
The development of the computer has also changed that.   A device
known as a modem allows any computer to connect to another
computer through the use of telephone lines.   By connecting to a
host computer, electronic contact can be made to literally
millions of computers around the world.   A host computer is one

that is attached to a network and serves many users.  These host computers are sometimes operated by commercial concerns, such as CompuServe and America Online, which allow subscribers to dial a local number and connect to a network which is in turn connected to their host systems.  These service providers allow electronic mail service between subscribers and sometimes between their own subscribers and those of other networks.  In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web, hence they are commonly described as Internet Service Providers (ISPs).  Some of these systems offer their subscribers the ability to communicate publicly or privately with each other in real time in the form of "chat rooms."

        c.    Aside from "chat rooms" that reside on many service providers' networks, these ISPs allow access to a larger network of chat channels, one of which is called Internet Relay Chat (IRC), that is accessed through intermediary or "client software".  Contact with other users in either of these "internal" or "external" online formats can be very open or anonymous - in front of everyone else who happens to be in the same room/channel at the same time, or very private and personal in the form of person to person instant messages.

        d.    Another type of this instant Messaging that exists on the Internet is called ICQ. ICQ ("I Seek You") is a program which allows the user:  to notify others of his online status (i.e., available, free for chat, away, etc.); to "page" another user by sending a message to the other user's computer; to transfer files, including text and graphic image files; to chat or communicate directly with one or more other users (up to an unlimited number); to save chat information in a text file for future access; and, to communicate via E-mail, among other things. A user's connection to ICQ and through ICQ to another user, is through a telephone line.

        e.    These communication structures are ideal for the child pornography collector.  The open and anonymous communication allows the user to locate others of similar inclination and still maintain their anonymity.  Once contact has been established, it is then possible to send text messages and graphic images to other trusted child pornography collectors. Moreover, the child pornography collector need not use the large service providers.  Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute pornography.  These communication links allow contacts around the world as easily as calling next door.

0031

Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages are well known and are the foundation of transactions between child pornography collectors.

f.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography.  For example, child pornography can be transferred (via electronic mail or through file transfer protocols[1] (FTP)) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide both electronic mail service, chat services, and easy access to the Internet, the computer is a preferred method of distribution of child pornographic materials.

g.  The computer's capability to store images in digital form makes it an ideal repository for pornography.  A single floppy disk can store dozens of images and hundreds of pages of text.  The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years.  Hard drives with the capacity of two hundred and fifty (250) gigabytes are not uncommon.  These drives can store thousands of images at very high resolution.  Magnetic storage located in host computers adds another dimension to the equation.  It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and to save that image to storage in another country.  Once this is done, there is no readily apparent evidence at the scene of the crime.  Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trial.

---

[1]The File Transfer Protocol (FTP) is a protocol that defines how to transfer files from one computer to another.  One use, known as ▓anonymous FTP▓, allows users who do not have a log in name or password to access certain files from another computer, and copy those files to their own computer.

11

## The Internet and Definitions of Technical Terms Pertaining to Computers

11.  As part of my training, I have become familiar with the
Internet (also commonly known as the World Wide Web), which is a
global network of computers and other electronic devices that
communicate with each other using various means, including
standard telephone lines, high-speed telecommunications links
(e.g., copper and fiber optic cable), and wireless transmissions
including satellite.  Due to the structure of the Internet,
connections between computers on the Internet routinely cross
state and international borders, even when the computers
communicating with each other are in the same state.  Individuals
and entities use the Internet to gain access to a wide variety of
information; to send information to, and receive information
from, other individuals; to conduct commercial transactions; and
to communicate via electronic mail ("e-mail").  An individual who
wants to use Internet e-mail must first obtain an account with a
computer that is linked to the Internet – for example, through a
university, an employer, or a commercial service – which is
called an "Internet Service Provider" or "ISP" (see definition of
"Internet Service Provider" below).  Once the individual has
accessed the Internet, that individual can use Internet mail
services, including sending and receiving e-mail.  In addition,
the individual can visit websites (see definition of "websites"

12

below), and make purchases from them.

12. Set forth below are some definitions of technical terms, used throughout this Affidavit pertaining to the Internet and computers more generally.

a. **Client/Server Computing:** Computers on the Internet are identified by the type of function they perform. A computer that provides resources for other computers on the Internet is known as a **server**. Servers are known by the types of service they provide, that is how they are configured. For example, a **web server** is a machine that is configured to provide web pages to other computers requesting them. An **e-mail server** is a computer that is configured to send and receive electronic mail from other computers on the Internet. A **client computer** is a computer on the Internet that is configured to request information from a server configured to perform a particular function. For example, if a computer is configured to browse web pages and has web page browsing software installed, it is considered a **web client**.

b. **Computer system and related peripherals, and computer media:** As used in this affidavit, the terms "computer system and related peripherals, and computer media" refer to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, scanners, in addition to computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats, including, but not limited to, JPG, GIF, TIF, AVI, and MPEG.

c. **Domain Name:** Domain names are common, easy to remember names associated with an Internet Protocol address (defined below). For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address

13

of 149.101.1.32.  Domain names are typically strings of alphanumeric characters, with each level delimited by a period.  Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level, or top-level domains are typically .com for commercial organizations, .gov for the United States government, .org for organizations, and, .edu for educational organizations.  Second level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable.  For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

d.  **Internet Service Providers (ISPs) and the Storage of ISP Records:** Internet Service Providers are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.  ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports.  Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber.  By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password.  ISPs maintain records ("**ISP records**") pertaining to their subscribers (regardless of  whether those subscribers are individuals or entities).  These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information,

14

which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "**electronic storage**," <u>see</u> 18 U.S.C. § 2510(17), and the provider of such a service is an "**electronic communications service.**" An "**electronic communications service**," as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "**remote computing service.**" 18 U.S.C. § 2711(2).

e.    **Internet Protocol Address (IP Address):** Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 254. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISP's employ **dynamic IP** addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A **dynamic IP address** is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the

15

Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISP's, including most cable providers, employ **static IP** addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a **static IP address** is an IP address that does not change over a period of time and is typically assigned to a specific computer.

f.   **Log File:** Log files are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

g.   **Modem:** A modem is an electronic device that allows one computer to communicate with another.

h.   **Trace Route:** A trace route is an Internet debugging tool used to document the list of inter-connected computers between two computers on the Internet. A trace route will list the names and IP addresses of computers that provide the physical link between two computers on the Internet. Trace routes are useful tools to help geographically identify where a computer on the Internet is physically located, and usually includes information about the registered owner of computers on the Internet.

i.   **Website:** A website consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

16

0037

j. **Website Hosting**: Website hosting provides the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites. Most hosting is "shared," which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a website, the client needs a server and perhaps a web hosting company to host it. **"Dedicated hosting"** means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a website. **"Co-location"** means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co-location facilities offer customers a secure place to physically house their hardware and equipment as opposed to keeping it in their offices or warehouse, where the potential for fire, theft or vandalism is greater.

## THE INVESTIGATION

13. In April 2006, Immigration and Customs Enforcement's Cyber Crimes Center, Child Exploitation Section initiated an investigation into a criminal organization operating a commercial child pornography website known as "Home Collection." The investigation has revealed that the same organization is operating numerous commercial child pornography websites. In addition, the organization utilizes various PayPal[1] accounts to

---

[1] The following information was obtained from PayPal's website located at URL http://www.PayPal.com: founded in 1998, PayPal, an eBay Company, enables any individual or business with an email address to securely, easily and quickly send and receive payments online using a credit card or bank account information. It is the most popular way to electronically pay for eBay auctions and it is becoming an inexpensive way for merchants to accept credit cards in their on-line storefronts instead of using a traditional

17

0038

process the payments for access to the member restricted websites.

14.    The initial member restricted website was located at URL: http://members.homecollect.us and was known as "Home Collection."  The investigation has revealed that the organization offered individuals monthly access to a member restricted website for $79.95 a month.  The member restricted website solicits customers through an advertising website.  The member restricted website communicates with customers via several different e-mail accounts.  ICE/C3/CES has conducted over 60 undercover transactions at the advertising websites associated with this investigation, which provided access to approximately 23 different member restricted websites.

15.    Each one of the undercover purchases followed one of the below listed patterns:

**Pattern One:**
I.    The ICE agent accessed a specific advertising website.

_____

payment gateway.  PayPal's service builds on the existing financial infrastructure of bank accounts and credit cards and utilizes the world's most advanced proprietary fraud prevention systems to create a safe, global, real-time payment solution. PayPal is a significant leader in online payment solutions, with 78 million account members worldwide.  PayPal is available in 56 countries and regions around the world.  Buyers and sellers on eBay, online retailers, online businesses, including operators and hosts of Internet websites, as well as traditional offline businesses, transact with PayPal.  PayPal identifies its accounts by the contact email address or addresses an account holder provides to PayPal as a contact address.

18

ii.     The ICE agent was redirected to an "iWest" payment
        website and entered personally identifiable
        information, including credit card information.  The
        "iWest" payment website identified a specific member
        restricted website through the use of the subject
        identifiers.

iii.    After completing the required information and clicking
        submit, the ICE agent was redirected to a second web
        page indicating the payment was currently being
        processed and to check for further information in the
        e-mail account provided by the ICE agent.

iv.     The ICE agent received an e-mail containing payment
        completion instructions, which included a hyperlink to
        a PayPal account.

v.      The ICE agent completed the transaction via the PayPal
        account.

vi.     The ICE agent received access to the member restricted
        website from one of the administrative e-mails
        associated with the criminal organization.

**Pattern Two:**

I.      The ICE agent accessed a specific advertising website.

ii.     The ICE agent was redirected to an "iWest" payment
        website and entered personally identifiable
        information, including credit card information.  The
        "iWest" payment website identified a specific member
        restricted website through the use subject
        identifiers.

iii.    After completing the required information and clicking
        submit, the ICE agent was redirected to a second web
        page indicating the payment was currently being
        processed.  The web page also contained a button the
        agent had to click to complete the payment.

iv.     The ICE agent clicked the button and was redirected to
        a secure PayPal payment web page.

v.      The ICE agent completed the transaction via the PayPal
        account.

vi.     The ICE agent received access to the member restricted
        website from one of the administrative e-mails
        associated with the criminal organization.

## IDENTIFICATION OF CERTAIN PAYPAL ACCOUNTS

16.   As indicated above, this criminal organization utilizes

multiple PayPal accounts to process payments for the monthly

19

subscription fees to the member restricted website. PayPal maintains transactional records for each PayPal account. The transactional records indicate at least the following items: date of purchase, time of purchase, name of customer, subject identifier assigned by the owner of the PayPal account indicating what the customer is purchasing, amount of purchase, customer's IP address, customer's e-mail address, seller's e-mail address, and the Item ID. In addition, PayPal also captures the customer's full billing address.

17. From approximately June 2006 to February 2007, ICE agents identified numerous child exploitation advertising websites that used the "iWest" payment website. As described in the two patterns listed in paragraph 15, ICE agents that conducted the undercover transactions would enter personally identifying information at the "iWest" payment website, but would ultimately be redirected to PayPal to complete the transaction. ICE agents made undercover transactions for access to child exploitation member restricted websites to the following PayPal accounts:

| Business Name: | Primary E-Mail Address: |
| --- | --- |
| Proof Soft | androdork@gmail.com |
| Lencomps LTD | lencomps@juno.com |
| Proof Soft | a_chakin@yahoo.com |
| Belfast LTD | belfastltd@juno.com |
| Belfast LTD | lag89@nc.rr.com |
| Financial Services | belfast_ltd@juno.com |
| Proof Soft | pallone21@gmail.com |

| | |
|---|---|
| Bullet Proof Soft | rrpay@hotmail.com |
| Bullet Proof Soft | Preyes1101@hotmail.com |
| Bullet Proof Soft | freeawh_bsb@yahoo.com |
| Bullet Proof Soft | bsb22flash@yahoo.com |
| Lencomps LTD | lencompsltd@juno.com |
| N/A | mr.corax@gmail.com |
| Jfire Financial | jufire@hotmail.com |
| A1_Soft_TM | webfs@email.com |
| S_Market | carbonnoid@hotmail.com |

## A.   Identification of the subject identifiers and Item IDs used in the PayPal accounts

18.  As discussed in paragraph 14, ICE agents have conducted over 60 undercover transactions during the course of this investigation.  The undercover transactions have identified a group of PayPal accounts that are being used to facilitate customer payments to specific child exploitation member restricted websites.  Those specific child exploitation member restricted websites can be identified in the PayPal transactional logs by the subject identifiers utilized by this criminal organization.  In or about November 2006, the criminal organization stopped utilizing the listed subject identifiers to identify the specific member restricted websites associated with each purchase.  They began using generic Invoice numbers, with a unique Invoice number assigned to each transaction.  In addition to the subject identifiers, the criminal organization also assigned Item IDs to each of the specific member restricted websites.  For each specific member restricted website, the criminal organization assigned a unique Item ID, which also

21

appeared in the PayPal transactional logs.  The following subject
identifiers with associated Item IDs were identified during
undercover transactions:

| Subject Identifier: | Item Number: |
|---|---|
| Sexy Angels | 1000 |
| Desired Angels | 1001 |
| Home Collection | 1002 |
| SickCR Package v5.06 Build 3638 | 1003 |
| DarkRO XP Tools v2.04 | 1004 |
| Underage Home | 1005 |
| Angel Collection 1006 | 1006 |
| Angel Collection 1010 | 1010 |
| HL Package/Hardlovers Paysite | 1012 |
| RH Collection | 1013 |
| Spycam Lolitas | 1144 |
| Boys Say Go | 1156 |
| Video Shop CD1 | 1159 |
| Video Shop CD2 | 1160 |
| Video Shop CD3 | 1161 |
| Video Shop CD4 | 1162 |
| Video Shop CD5 | 1163 |
| Kidz Index | 1177 |
| CP City | 1202 |
| Lolivirgins | 1192 |
| Excited Angels | 1218 |

## THE SUBJECT OF THIS SEARCH WARRANT

19.  Analysis of the transactional logs obtained from PayPal
provide the name and address of various customers that purchased
access to at least one of the identified child pornography
websites, including the subject of this search warrant as
described and detailed below.

20.  On December 18, 2006, **Channing BURGESS** made a payment
to PayPal account **BELFAST_LTD@JUNO.COM**.  The payment was for **Sexy**
**Angels** in the amount of **$79.95**.  The PayPal transactional logs
provided the following relevant information:

Date: December 18, 2006

Time: 15:42:47 PST

Name: Channing BURGESS

Subject: Invoice # 24973

Other IP: 66.45.139.124

Gross: $79.95

From Email Address: superstarcsb@yahoo.com

To Email Address: BELFAST_LTD@JUNO.COM

Item ID: 1000

First Name: Channing

Last Name: BURGESS

Primary Email: superstarcsb@yahoo.com

Primary Address:

Kansas 66046

Night Phone:

21.  As stated in paragraph 14, ICE agents have conducted
over 60 undercover transactions during the course of this
investigation.  In conducting these undercover transaction, ICE

23

agents have identified specific subject identifiers and Item Ids

that are associated with child exploitation member restricted

websites.  The identifier **Item ID: 1000** refers to a child

exploitation member restricted website known as **"Sexy Angels."**

ICE agents purchased access to this member restricted website on

the following dates: **10/05/06; 11/28/06** and **1/19/07.**  On each

occasion, the transaction was either identified by the website

identifier **Sexy Angels** or the Item ID **1000.**


22.  **Home Collection 1000/Sexy Angels:** The member restricted
website associated with the subject identifiers Home Collection
1000 and "Sexy Angels" is known as "Sexy Angels."  The member
restricted website contained the following sections: "News;"
"Photos;" "Videos;" "Software;" "Message Board;" and "Cancel or
Rebill."  There were approximately **9,442 images files** in the
"Photos" section and approximately **186 video files.**  Several of
the images depicted lascivious displays of the female minors'
genitalia.  The female minors were displayed in sexually
suggestive manners.  The images were submitted to NCMEC, but
NCMEC was unable to match any of the images with known victims.
The following image descriptions provide a sample of the content
of the member restricted website:

Image 0096
(http://sexyangels.freeawh.com/members/photos/old-2004-lolitas-
022/image0096)
This image displays a close up shot of a nude prepubescent female
minor's vagina.  There are approximately 102 images of the same
prepubescent female minor in the listed gallery.  The majority of
the images depict the female minor at the beach removing her
bathing suit.  This image focuses on her vagina.  The female
minor appears to be standing, bent slightly at the waist.  The
image clearly displays the female minor's anus and vagina.

Image 0059
(http:// sexyangels.freeawh.com/members/photos/ls-magazine-
0004/0059.jpg)
This image displays two nude prepubescent female minors lying on

a bed.  The closer female minor is lying with her head resting on the other female minor's vagina.  They are both lying on their backs.  The closer female minor has her left arm behind the left leg of the second female minor and her right hand pointing towards her own vagina.  Both of her legs are bent at the knee and her feet are touching.  There is a clear display of her vagina and breasts.  The second female minor is also lying on her back; her head slight off the bed.  Both of her legs are bent at the knee and her feet are also touching.  Her legs are raised in the air and each hand is grasping one of her legs at her shin.

Image 0027
(http:// sexyangels.freeawh.com/members/photos/ls-models-0004/0027.jpg)
This image displays a close up shot of a nude prepubescent female minor's anus and vagina.  The female minor has her butt and legs in the air; with her legs spread clearly displaying her anus and vagina.

23.    The three image files described in the above paragraph and downloaded from the web site **Sexy Angels** meet the criteria of child pornography as defined in 18 U.S.C. § 2256.

24.    Paypal transactional logs also show that on **January 30, 2007, Channing BURGESS** made a payment of **$79.95** to a Paypal account described in paragraph 17 from the **IP address 66.45.139.124**.  The site ID number listed in this transaction has not been fully identified as being a child pornography web site by this investigation at this time.

25.    YAHOO Inc, Sunnyvale, California is an company through which the E-mail address **superstarcsb@yahoo.com** is issued.

Records from Yahoo Inc reveal that the E-mail address superstarcsb@yahoo.com is subscribed to **Channing Stewart BURGESS,** 1301 West 24th Street, Apt F-31, **Lawrence, Kansas 66046.** YAHOO Inc records show that **Channing BURGESS** lists his contact telephone number as being 785 833-0944 and 913 620 1783.

26.    YAHOO Inc confirmed that the **superstarcsb@yahoo.com** E-mail account was active on **December 18, 2006,** and that the account has been active since March 16, 2001.    YAHOO records show from May to July 2007 that the YAHOO E-mail account **superstarcsb@yahoo.com** is being accessed through the IP address 24.124.88.184.

27.    Internet record checks on the IP address 24.124.88.184 and **IP address 66.45.139.124** reveal that these IP addresses are owned by Internet service provider SUNFLOWER BROADBAND in Lawrence, Kansas.    SUNFLOWER BROADBAND records show that IP address 24.124.88.184 is currently subscribed to **Channing BURGESS** at the service address 1301 West 24th Street, Apt F-31, **Lawrence, Kansas 66046.** SUNFLOWER BROADBAND records show that **Channing BURGESS** has been a customer since March, 2005, and has a contact telephone number of

26

28.  A record check with the Kansas Department of Revenue, Drivers Licence Bureau on a **Channing BURGESS** revealed a Kansas Drivers License number K02540573 issued to a **Channing Stewart BURGESS** with the date of birth _____ . The Kansas Drivers License shows an address of _____, **Lawrence, Kansas 66046** for **Channing Stewart BURGESS**. The Kansas Drivers License was issued to **Channing Stewart BURGESS** on September 21, 2006.

29.  Credit history record checks on **Channing Stewart BURGESS** show that **BURGESS** is listed to reside at the address _____, **Lawrence, Kansas 66046**.

30.  On August 13, 2007, Detective Warren Burkett of the Lawrence, Kansas Police Department conducted a drive-by the address _____, **Lawrence, Kansas 66046**. Detective Burkett described the address to be a three story multifamily structure containing 36 apartments which is broken into three sections with each section containing 12 apartments each.  The apartment building is tan and gray in color with black shutters on each side of the apartment windows.   The main entry into each section is located in the middle of each building which has a hallway and stairs.  The target building has a large "P" attached to the building above the entry hallway.   Apartment **31**

27

is located on the second floor of building "P" and the apartment

numbers are affixed to the building on the left side of the entry

door to the apartment.  The apartment building is located in the

city of Lawrence, Douglas County, Kansas.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEM

31.  Based upon your affiant's knowledge, training and

experience, and the experience of other law enforcement

personnel, your affiant knows that in order to completely and

accurately retrieve data maintained in computer hardware or on

computer software, all computer equipment, peripherals, related

instructions in the form of manuals and notes, as well as the

software utilized to operate such a computer, must be seized and

subsequently processed by a qualified computer specialist in an

appropriate setting such as an office or laboratory.  This is

true because of the following:

a.   Computer storage devices (like hard disks,
diskettes, tapes, laser disks, Bernoulli drives) can store the
equivalent of hundreds of thousands of pages of information.
Additionally, a suspect may try to conceal criminal evidence, and
he or she might store criminal evidence in random order with
deceptive file names.  This may require searching authorities to
examine all the stored data to determine which particular files
are evidence or instrumentalities of crime.  This sorting process
can take weeks or months, depending on the volume of data stored,
and it would be impractical to attempt this kind of data search
on site.

b.   Searching computer systems for criminal evidence
is a highly technical process, requiring expert skill and a
properly controlled environment.  The vast array of computer
hardware and software available requires even computer experts to

28

specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data.  In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

32.  Based upon your affiant's consultation with experts in computer searches, data retrieval from computers and related media and consultations with other agents who have been involved in the search of computers and retrieval of data from computer systems, your affiant knows that searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.  This is true because of the following:

a.  The peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software.  Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system.  It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above.  In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as

29

well as all related instruction manuals or other documentation and data security devices. If the analyst determines that the I/O devices, software, documentation, data security devices are not necessary to retrieve and preserve the data after inspection, the government will return them in a reasonable time.

b. In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices as well as central processing unit (CPU). In cases like this one where the evidence consists partly of graphics files, the monitor and printer are also essential to show the nature and quality of the graphic images which the system could produce. Further, the analyst again needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

c. In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, and modem are all instrumentalities of the crime of transmitting child pornography in violation of law, and should all be seized as such.

d. I am familiar with and understand the implications of the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, and the role of this statute in protecting First Amendment activities. I am not aware that any of the materials to be searched and seized from the SUBJECT PREMISES are protected materials pursuant to the PPA. If any such protected materials are inadvertently seized, all efforts will be made to return these materials to their authors as quickly as possible.

## CONDUCT OF INDIVIDUALS INVOLVED IN CHILD PORNOGRAPHY

33. Pursuant to my training and experience, as well as the training and experience of other law enforcement personnel, I have learned that:

a. Child pornography is not readily available in retail establishments; accordingly, individuals who wish to obtain child pornography do so by ordering it from abroad or by discreet contact with other individuals who have it available.

30

0051

b.   the use of computers to traffic in, trade, or collect child pornography and obscenity has become one of the preferred methods of obtaining obscene and child pornographic materials. An individual familiar with a computer can use it, usually in the privacy of his own home or office, to interact with another individual or a business offering such materials in this country or elsewhere in the world.  The use of a computer provides individuals interested in obscenity or child pornography with a sense of privacy and secrecy not attainable by other media.  It also permits the individuals to contact and interact with many more individuals than through the use of the mails.

c.   Your affiant is aware from training and experience that persons involved in sending or receiving child pornography tend to retain it for long periods of time.  This tendency is enhanced by the increased sense of security that a computer affords. In addition, your affiant is aware from training and guidance that persons who procure child pornography and who have a proclivity for sexual activity involving youths, obtain and retain magazines, films, videos, pictures and other items of child pornography as well as correspondence, advertising, bills, and notes relating to sexual activity involving children for long periods of time and do not dispose of or destroy such materials except to trade such materials with others in exchange for similar items.  In addition,  your affiant's training has shown that such material is normally and generally kept in the individual's residence or other secure location to ensure convenient and ready access.

## CONCLUSION

34.  Based upon the foregoing, Your affiant asserts that probable cause exists that the computer, and related documents pertaining to the acquisition, and distribution of child pornography are located on the premises at                          ,

, **Lawrence, Kansas 66046.**

31

35.  Your affiant would respectfully suggest that there is probable cause to believe that these records are maintained in files, computer storage facilities or other data storage facilities, and that, within these files, there are records-- namely, correspondence, notes, papers, ledgers, personal telephone and address books, telephone toll records, telephone message slips, memoranda, telexes, facsimiles, documents, photographs, negatives, photographic slides or other visual depictions or equipment--used to depict child pornography materials.

36.  Additionally, your affiant believes that evidence of violations of 18 U.S.C. § 2252 are contained or concealed in CD Rom disks, DVD disks, thumb drives, video tapes, computer tapes, cassettes, cartridges, streaming tape, commercial software and manuals, hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk applications programs, data disks, system disk operating systems, magnetic media-floppy disks, tape systems and hard drive and other computer related operating equipment, which depict or are used to depict child pornographic materials contrary to the laws of the United States.

37.   Based on all the foregoing, your affiant respectfully suggest that there is probable cause to believe that child pornography, and other evidence of the use of computers to traffic in child pornography as set forth in the attached search warrant, will be found on the premises located at ~~1301 Haskell 2815~~ ~~Avenue, Apt 9-11~~, **Lawrence, Kansas 66046** and under the control of **Channing Stewart BURGESS** and/or other individuals unknown, and that those items of child pornography constitute merchandise imported distributed and/or transported across state lines contrary to the laws of the United States.

38.   Your affiant respectfully requests that a search warrant be issued authorizing the Immigration and Customs Enforcement, with the appropriate assistance from other law enforcement officers, to search for and to seize items listed in the attached attachment A, which is property that constitutes evidence of a criminal offense in violation of 18 USC § 2252 and also contraband, the fruits of a crime, or things otherwise criminally possessed.

39.   Your affiant respectfully requests that a search warrant be issued authorizing the Immigration and Customs Enforcement, with the appropriate assistance from other law enforcement officers, to enter the following described premises:

### RESIDENCE DESCRIPTIONS

, Lawrence, Kansas 66046:

Located at the address is a three story multifamily structure containing 36 apartments which is broken into three sections with each section containing 12 apartments each.  The apartment building is tan and gray in color with black shutters on each side of the apartment windows.   The main entry into each section is located in the middle of each building which has a hallway and stairs.   The target building has a large "P" attached to the building above the entry hallway.   Apartment 31 is located on the second floor of building "P" and the apartment numbers are affixed to the building on the left side of the entry door to the apartment.   The apartment building is located in the city of Lawrence, Douglas County, Kansas.

FURTHER AFFIANT SAYETH NOT.

_____
James D Kanatzar, Special Agent
Immigration and Customs Enforcement

Subscribed and sworn before
me this **16th** day of August, 2007.

_____
HONORABLE DAVID J. WAXSE
UNITED STATES MAGISTRATE JUDGE

34

0055

ATTACHMENT A

ITEMS TO BE SEIZED

1.    Tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, CD Rom disks, DVD disks, thumb drives, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession or receipt of child pornography, or information pertaining to an interest in child pornography, and the data within the aforesaid objects relating to said materials.

2.    Correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 transmitted or received using computer, some other facility or means of interstate or foreign commerce, common

35

0056

carrier, or the U.S. mail.

3.    Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

4.    Originals, copies and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

5.    Motion picture films and video cassettes of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

6.    Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, offering to transmit through interstate or foreign commerce, including by United States mail or by computer, visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United states Code, Section 2256.

7.    Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, soliciting minors to engage in sexually explicit conduct for the purposes of producing child pornography as defined in Title 18, United States Code, Section 2251.

8.    Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, electronic documents and messages, describing or related to the operation of

36

the child pornography distributors/collectors as described in the attached affidavit, as well as any envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, electronic documents and messages related to the solicitation and/or invitation for membership into this group.

9.    Envelopes, letters, and other correspondence, including, but not limited to, electronic mail, chat logs and electronic messages, identifying persons transmitting through interstate or foreign commerce, including by United states mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

10.  Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

11.  Address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce including

0058

by United States mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

12.   Address books, names, lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 256.

13.   Diaries, notebooks, notes and other records reflecting personal contact and other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

14.   Materials and photographs depicting sexual conduct between adults and minors.

15.   Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

16.   Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, handwritten notes and handwritten notes in computer manuals.

38

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

In the Matter of the Search of
premises known as,

**SEARCH WARRANT**

~~1301 West 24th Street, Apt P 31~~, Lawrence,
Kansas 66046

CASE NUMBER:  07-8085-DJW

To:    Special Agent of the Immigration and Customs Enforcement, James D Kanatzar,
and any Authorized Officer of the United States

Affidavit(s) having been made before me by, Immigration and Customs Enforcement, SA James D
Kanatzar, who has reason to believe that on the person of or on the premises known as:

~~1301 West 24th Street, Apt P 31~~, Lawrence, Kansas 66046

> a three story multifamily structure containing 36 apartments which is broken into three
> sections with each section containing 12 apartments each.  The apartment building is tan
> and gray in color with black shutters on each side of the apartment windows.   The main
> entry into each section is located in the middle of each building which has a hallway and
> stairs.  The target building has a large "P" attached to the building above the entry hallway.
> Apartment **31** is located on the second floor of building **"P"** and the apartment numbers
> are affixed to the building on the left side of the entry door to the apartment.   The
> apartment building is located in the city of Lawrence, Douglas County, Kansas.

in the District of Kansas there is now concealed certain property, namely:

> See Attachment A. Which are evidence, fruits, and instrumentalities of trafficking, receipt,
> distribution, and/or possession of visual depictions, and other related materials, involving
> minors engaging in sexually explicit conduct (child pornography), as defined in Title 18,
> United States Code, Section 2252.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that
the property so described is now concealed on the premises above-described and establish grounds for
the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _8 2 6 2007_
(not to exceed 10 days)the person or place named above for the property specified, serving this warrant
and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.)~~(at any time in the day or night as I
find reasonable cause has been established)~~ and if the property be found there to seize same, leaving
a copy of this warrant and receipt for the  property taken, and prepare a written inventory of the property
seized and promptly return this warrant to United States Magistrate Judge David J. Waxse as required
by law.

_August 16_ , 2007 at  Kansas City, Kansas
Date and Time Issued   _at  3:40 PM_

Honorable DAVID J. WAXSE
U.S. Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

## ATTACHMENT A

## ITEMS TO BE SEIZED

1.    Tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, CD Rom disks, DVD disks, thumb drives, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides,  or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography,  information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession or receipt of child pornography, or information pertaining to an interest in child pornography, and the data within the aforesaid objects relating to said materials.

2.    Correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 transmitted or received using computer, some other facility or means of interstate or foreign commerce, common

35

0061

carrier, or the U.S. mail.

3.    Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

4.    Originals, copies and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

5.    Motion picture films and video cassettes of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

6.    Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, offering to transmit through interstate or foreign commerce, including by United States mail or by computer, visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United states Code, Section 2256.

7.    Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, soliciting minors to engage in sexually explicit conduct for the purposes of producing child pornography as defined in Title 18, United States Code, Section 2251.

8.    Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, electronic documents and messages, describing or related to the operation of

36

the child pornography distributors/collectors as described in the attached affidavit, as well as any envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, electronic documents and messages related to the solicitation and/or invitation for membership into this group.

9.    Envelopes, letters, and other correspondence, including, but not limited to, electronic mail, chat logs and electronic messages, identifying persons transmitting through interstate or foreign commerce, including by United states mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

10.    Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

11.    Address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce including

37

by United States mail or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

12.    Address books, names, lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 256.

13.    Diaries, notebooks, notes and other records reflecting personal contact and other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

14.    Materials and photographs depicting sexual conduct between adults and minors.

15.    Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

16.    Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, handwritten notes and handwritten notes in computer manuals.



DEPARTMENT OF HOMELAND SECURITY
IMMIGRATION AND CUSTOMS ENFORCEMENT

## Inventory Log

Page _1_ of _(_

Date _8/17/2007_       Location _1301 West 24th Street Apt P-31 Lawrence KS_

| Item # | Item Description | Location Discovered | Time | Person Discovering |
|---|---|---|---|---|
| 1 | DELL CPU # 3FLPØ71 | "C" BEDROOM DESK | 0800 | J. KANATZAR |
| 2 | Quantum Harddrive M8034 | "C" Bedroom Chair | 0800 | D. Collins |
| 3 | DISCS, Storage Media | "C" Bedroom Desk | 0800 | Brown |
| 4 | CD's | "C" Bedroom M Desk | 0800 | Brown |
| 5 | MISC. DOCUMENTS | "C" Bedroom Chair | 0800 | D. Collins |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

8-17-07

0065

Warrant Number _07-8085-DJW_

Completed by: _Vincent Fazio_

Resident Agent in Charge, 9747 NW Conant Ave., Kansas City, MO 64153