IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NO.08-20062-01-CM** |
| **v.** ) | |
| ) | |
| **CHANNING BURGESS,** ) | |
| ) | |
| **Defendant.** ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE

The United States of America, by and through Assistant United States Attorney, Kim I. Martin, hereby responds in opposition to the defendant's motion to suppress evidence. In support of its position the United States, states:

## FACTS

In April of 2006, Immigration and Customs Enforcement's Cyber Crimes Center, Child Exploitation Section began an investigation into a criminal organization operating a commercial child pornography website known as "Home Collection." The investigation revealed that the same organization was operating numerous commercial child pornography websites. In addition, it was discovered that the organization used various PayPal accounts to process payments for access to the member restricted sites.

Agents were able to locate the website, and discovered the organization was offering individual monthly access to the restricted website for $79.99 per month. It was

learned that the member restricted site solicited customers through an advertising website. The member restricted site communicated with its customers via several different e-mail accounts, including BELFAST_LTD@JUNO.COM. ICE agents conducted over 60 undercover transactions in order to gain access to the approximately 23 different member restricted sites run by this organization.

In each instance the ICE agents accessed a specific advertising website and were redirected to an "iWest" payment website. The agents were required to enter personally identifiable information including credit card information. After completing the required information and hitting submit, the agents were redirected to a second web page and were informed that the payment was being processed. On some occasions, the agents were advised to check for further information in the email account provided by the agent when he subscribed. In those instances the Agent received an e-mail message containing payment completion instructions which included a hyperlink to a PayPal account. On other occasions the agents were automatically redirected to a secure PayPal payment web page and the agent completed the transaction via PayPal account. In both instances the agents were notified via e-mail they had been accepted as members and were given the ability to access the member restricted site. Necessarily that notification email was sent to the email account provided by the agents when they subscribed to the site.

As indicated, the organization used PayPal to process the fees from its customer memberships. PayPal maintained transactional records for each PayPal account and included: the date of purchase, the time of purchase, name of customer, subject identifiers assigned by the owner of the PayPal account, indicating what the customer

was purchasing, amount of purchase, customer's IP address, customer's e-mail address, seller's e-mail address, and the Item ID. In addition, PayPal also captures the customer's full billing address.

From approximately June of 2006 to February of 2007 ICE agents identified the numerous child exploitation advertising websites that used the "iWest' payment website. Further, ICE agents worked to identify the subject identifiers and Item ID's used in the PayPal accounts. In approximately November 2006 the criminal organization stopped using the subject identifiers to identify the specific website purchased, and began to use generic invoice numbers, with a unique invoice number being assigned to each transaction. Additionally, the organization began using a specific number to represent the specific website purchased. This number was listed as the Item ID number, and corresponded to the PayPal transactional logs. For example Item # 1000 was identified by agents as a subscription to "Sexy Angels."

Agents analyzed the transactional logs obtained from PayPal and were able to discover the names and addresses of various customers who purchased access to at least one of the identified child pornography websites. One of the customers identified in this manner, was the defendant, Channing Burgess.

Records of PayPal revealed that on December 18, 2006 the defendant made a payment to one of the identified PayPal accounts. The payment was for "Sexy Angels" in the amount of $79.95. The PayPal transaction logs provided the following information about the defendant:

Date: December 18, 2006

Time: 15:42:47 PST

Name: Channing Burgess

Subject: Invoice # 24973

Other IP: 66.45.139.124

Gross: $79.95

From Email Address : superstarcsb@yahoo.com

To Email Address: BELFAST_LTD@JUNO.COM

Item ID: 1000

First Name: Channing

Last Name: Burgess

Primary Email: superstarcsb@yahoo.com

Primary Address 1301 West 24th Street, Apt P-31, Lawrence, Kansas 66046

Night Phone: 785-832-0044

      As indicated previously, Agents conducted over 60 undercover transactions and as a result were able to identify Item ID # 1000 as a restricted website known as "Sexy Angels."  Agents purchased access to "Sexy Angels" on 10/05/06, 11/28/06 and 1/19/07.  On each occasion the website contained images and video files containing child pornography.  Three of the images from the "Sexy Angels" website were described in the affidavit for search warrant and were deemed to meet the criteria of child pornography as defined by statute.

      The PayPal transaction logs also showed that on January 30, 2007, the defendant made a payment of  $79.95 to another  PayPal account described in paragraph 17 of the affidavit.  However, at the time the warrant was sought, the site ID number had not been verified as a child pornography site.

Agents then sought records from Yahoo Inc. Sunnyvale, California. Yahoo Inc. is the company through which Email address superstarcsb@yahoo.com was issued. Records from Yahoo revealed that superstarcsb@yahoo.com was subscribed to by the defendant, Channing Stewart Burgess, 1301 West 24th Street, Apt P-31, Lawrence, Kansas 66046. Yahoo Inc. records also indicated the defendant listed his contact telephone number as **785 832-0044** and 785 840-5589.

Yahoo Inc. confirmed that the superstarcsb@yahoo.com email account was active on December 18, 2006, and that the account had been active since March 16, 2001. The Yahoo records further reflected that from May to July 2007 the Yahoo email account of superstarcsb@yahoo.com was being accessed through the IP address of 24.124.88.184.

Agents conducted an internet record check on IP addresses 24.124.88.184 and 66.45.139.124. That check revealed that both of those IP addresses belong to the Internet Service Provider, Sunflower Broadband, located in Lawrence, Kansas. Records from Sunflower Broadband indicted that IP address 24.124.88.184 was being used by the defendant Channing Burgess with service at 1301 West 24th Street, Apt P-31, Lawrence, Kansas 66046. Finally the Sunflower Broadband records revealed that the defendant had been a customer since March, 2005.

Agents then checked with the Kansas Department of Revenue, Drivers Licence Bureau. It revealed that the defendant had a drivers licence listing an address of 1301 West 24th Street, Apt P-31, Lawrence, Kansas.

A credit history record check on the defendant also showed that the defendant listed his address as 1301 West 24th Street Apt P-31, Lawrence, Kansas.

## **ARGUMENTS AND AUTHORITIES**

**Probable cause to search the defendant's residence**

    **Probable cause to search the defendant's residence**

The defendant seeks to suppress evidence found during a search of his residence pursuant to a search warrant issued on August 16, 2007.  The defendant claims that the warrant was not supported by probable cause.  "Probable cause exists where attending circumstances 'would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place' " *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005) quoting *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).  Courts, in determining whether or not probable cause exists for the issuance of a warrant, "assess the sufficiency of a supporting affidavit based on the totality of the circumstances." Id.  The Supreme Court has repeatedly expressed its strong preference for searches conducted pursuant to a warrant, and has concluded that "great deference should be paid when reviewing a magistrate's decision to issue a warrant."  *Ornelas v. United States*, 517 U.S. 690 (1996).  Courts may readily accept the judgment of a law enforcement officer if it is backed by a warrant issued by a magistrate.  *United States v. Watson*, 423 U.S. 411 (1976).  Even if a warrant is issued without probable cause, the evidence obtained should not be suppressed if the officers executing the warrant acted in good faith. *United States v. Price*, 265 F.3d 1097 (10th Cir. 2001).

The defendant asserts that an individual's payment for membership to a child pornography website is not enough to establish probable cause to issue a search warrant.  The defendant sites cases related to the Candyman investigation to support

his claim.   Namely, the defendant cites,  *United States v. Froman*, 355 F.3d 882 (5th Cir. 2002); *United States v. Coreas*, 419 F.3d 151 (2nd Cir. 2005); *United States v. Martin*, 426 F.3d 68 (2nd Cir. 2005); *United States v. Shields*, 458 F.3d 269 (3rd Cir. 2006); and *United States v. Hutto*, 84 Fed Appx 6, 2003WL22890954 an unpublished 10th Cir. decision dated December 9, 2003.  In the *Hutto* case, the 10th Circuit upheld the search finding that even after the false statements were redacted, there was enough information to establish probable cause.   It is important to note that in the *Coreas* case, the court found  there were false statements contained in the affidavit, and,  after excising the false statements, what remained was insufficient to establish probable cause.  There has been no allegation in this case that the affidavit contained false or misleading information. Thus, the actual holding of that case, and the *Hutto* case have no relevance here.

Secondly, as stated above, those cases involved the "Candyman" investigation. That investigation targeted an e-group.  An e-group is more or less an on line club of sorts where like minded people can exchange information, and upload and download electronic files.  It was free to join, and  as stated in *Coreas*, the entire invitation to join stated, "This group is for people who love kids.  You can post any type of messages you like too or any type of pic and vids you like too P.S. IF WE ALL WORK TOGETHER WE WILL HAVE THE BEST GROUP ON THE NET."   *Coreas*, at 152.

Contrast that to what we have in the instant case.   The website joined by the defendant was not a free social networking group, rather, it was a pay to join site, which required members to pay a fee before access would be granted.  In this case, the cost of membership to the site was $79.95.  The banner page for the website purchased by

the defendant–-that is the page which initially appeared, and which did not require the person accessing the website to provide any financial information or any personal information, proclaimed, "This is what you've been looking for so long!"  It goes on to state, "In our Lolita paradise your sweet dreams will come true.  These cute innocent angels are posing for you solo and in couples.  They are ready to show you all their secret desires, so tight, so beautiful.  Fly to paradise of orgasm with our little angels."  Additionally, and most significantly, the banner page featured  images of child pornography and  Lolita is a term commonly used to indicate child pornography.  Before clicking the join now button,  the defendant would necessarily have seen the images of children provocatively posed to expose their genitalia, and he would have read that he was  about to enter a "Lolita paradise." The defendant would clearly have known what he would be spending his money to purchase.  There is little chance the defendant joined "Sexy Angels"  without knowing exactly what he was buying.

In *United States v. Strasser*, 247 F. Supp.2d 1135, 1144 (E.D.Mo. 2003), another Candyman case,  the court stated, "The government asks me to find that if a person one time subscribes to a service, ***whose content could not be known*** for sure until after subscribing, and that person never goes to the trouble of unsubscribing then that person is likely to possess child pornography." Id at 1144.  Here the content was clearly known to the defendant and all others who sought to join,  ***before*** they clicked the "join now" button, and paying their $79.95.   Here, unlike the Candyman investigation we have a website openly flaunting that it contained illegal child pornography, and seeking people to join in the illegal activity.  People who joined knew they were paying to have access to illegal material, and by paying for access to this site they were making the abuse of

children profitable.

During the investigation of this website agents were able to establish a pattern or a method of operation. Each new membership was treated in essentially the same manner. The person seeking membership had to click the join now page and provide personal information. That information included the person's name, address, credit card information, and email address. Upon verifying payment, the customers received an email granting them access to the site. In order for the defendant to have been billed the $79.95 as evidenced by the PayPal records, the defendant would have had to: (1) go to the Home Collection site, pick which restricted member site he wished to join, view the Sexy Angels banner page, (2) click the "join now" button, and (3) provide his name, address, credit card information, and email address. That was clearly done in this case. We know that was done because on December 18, 2006 PayPal transactional logs show the defendant purchased Item ID # 1000 for $79.95. That item ID # had been previously identified by agents as the "Sexy Angels" website. The records revealed that it was the defendant's name, address, telephone number and email account that were provided for the purchase. Furthermore, records from the defendant's email provider, Yahoo, Inc. verified that the email address provided when subscribing to the "Sexy Angels" site belonged to the defendant and the service address once again corresponded to the address given when subscribing to the child pornography site.

The defendant argues that the IP address captured during the subscription process was not associated with the defendant. He claims that the Internet Service Provider, Sunflower Broadband, uses static IP addresses, and as a result each subscriber is assigned his own IP address. The defendant is mistaken. It is believed

that Shane Woodard of Sunflower Broadband will testify at the suppression hearing. It is believed that he will state that Sunflower Broadband issues both static and dynamic IP addresses. However, the two IP addresses listed in the affidavit are dynamic. A dynamic IP address simply means that it can be reassigned to another user, if for instance you log off your computer. Further it is believed that Mr. Woodard will testify that records of which customer was assigned a certain IP address at a certain date and time, are kept by his company for only 3 months. Therefore, the information regarding who was assigned IP address 66.45.139.124 on December 18, 2006 would have been unavailable when agents issued their subpoena on July 10, 2007. However, Sunflower Broadband was able to assert that between June 28, 2007 at 6:57 am and June 11, 2007 at 2:10 pm the defendant's computer was assigned the Sunflower Broadband IP address 24.124.88.184. That IP address coincides with the IP address used to access the defendant's Yahoo email account from May to July 2007. Both IP addresses listed in the affidavit, 24.124.88.184 and 66.45.139.124 belong to Sunflower Broadband. Prior to requesting the search warrant the agents confirmed that the defendant's internet service provider was Sunflower Broadband and had been since March of 2005

Additionally agents checked with the Kansas Division of Motor Vehicles and discovered that a Channing Burgess was residing at the 1301 West 24th Street Apt P-31, Lawrence, Kansas the same as the address which was the subject of the warrant. They further verified that a Channing Burgess lived at that address by running a credit history check on the defendant.

Based upon all the information above, there was ample probable cause to believe the defendant signed up and paid for, access to an illegal child pornography

website.  Thus, there was more than a fair probability to believe that evidence of the defendant's involvement in or possession of illegal child pornography would be discovered at the defendant's residence.  There was probable cause to believe the agents would find the credit card statement of the defendant confirming the charge to PayPal   There was probable cause to believe the agents would find the confirmation email on the defendant's computer which granted him access to the illegal site.  There certainly was probable cause to believe the agents would find evidence the defendant sought membership to the "Sexy Angels" site.  Finally, given the expense of the "Sexy Angels" site, there was probable cause to believe the agents would find evidence the defendant visited the site, and probable cause to believe the agents would find child pornography on the defendant's computer.

      The defendant opines that the "Sexy Angles" website contained completely legal photographs as well as child pornography.  He seems to suggest that because the agents apparently did not review all 9,422 image files or all 186 video files, some of the content must necessarily be "legal" pornography. The defendant makes this claim with no idea whether or not it is true.  The government suspects the defendant has not reviewed the entire content of the website, and therefore simply makes an assumption not based upon any fact .  And, while it may be true that not all the images contained on the "Sexy Angles" website meet the legal definition of child pornography (the government,  likewise,  has not reviewed all 9,422 image files or the 186 video files); that does not negate the fact that the defendant sought out child pornography,  and believed he was purchasing access to a child pornography site.  That fact is clearly evidenced by the banner page which displays images of child pornography and makes

the claim that the purchaser of access to that site will be entering "Lolita paradise." Both of those things (the images and the Lolita paradise claim) would have been clearly visible to the defendant *before* he clicked the "join now" button.

The defendant next asserts that because there is no direct evidence the defendant ever accessed the site, probable cause cannot exist.  However, all of the above information certainly provided the magistrate with the ability to conclude, based upon the totality of the circumstances,  there was a fair probability that evidence of the defendant's possession and or receipt of child pornography would be found at his residence.  It is not reasonable to conclude that an individual would pay $79.95 to be able to access a website, and then never take advantage of that access.  Additionally, such a claim would not defeat the presence of probable cause to search, but rather, would more properly be a defense at the time of trial (i.e. no evidence of the defendant's receipt or possession of child pornography was found, and therefore he cannot be found guilty). Based on all the information set forth above, probable cause existed to search the defendant's residence for evidence related to the purchase of child pornography. Magistrate Waxse reviewed the affidavit and made the judicial determination that probable cause existed.  In this case agents did exactly what is expected of them.  They gathered evidence which they believed provided them with sufficient probable cause to search the defendant's residence.  They prepared an affidavit and presented the facts to the magistrate for a judicial determination of probable cause.  The magistrate issued a warrant finding that probable cause in fact existed.  The defendant does not allege the warrant was illegally obtained or that the agents provided any false or misleading information in order to obtain the warrant.  As indicated above, due to the "great

deference," and "strong preference" for searches conducted pursuant to a warrant, the defendant must make some showing of illegality to justify suppression of evidence seized pursuant to a warrant. *United States v. Corral-Corral*, 899 F.2d 927 (10th Cir. 1990). "With a warrant a doubtful or marginal search may be up held where otherwise it would fail." *United States v. Leon,* 468 U.S. 897, 914 (1984).

Probable cause existed to search the defendant's residence and computer for evidence, and a search warrant was properly issued. The defendant's motion to suppress evidence on the basis that no probable cause existed to search must be denied.

## CONCLUSION

Probable cause existed for Magistrate Waxse to issue a warrant to search the defendant's residence. The agents acted in good faith reliance on the judicial determination of probable cause made by Magistrate Waxse. The warrant in this case was issued by a neutral and detached magistrate, and there has been no allegation of false or misleading information in the affidavit.

The government respectfully requests the defendant's motion to suppress be denied.

        Respectfully Submitted,

        Eric F. Melgren
        United States Attorney
        District of Kansas

        s/Kim I. Martin
        KIM I. MARTIN, #13407
        Assistant United States Attorney
        500 State Avenue, Suite 360
        Kansas City, Kansas 66101
        (913) 551-6730 (telephone)
        (913) 551-6541 (facsimile)
        E-mail: Kim.Martin@usdoj.gov
        ELECTRONICALLY FILED

        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August, 2008, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Michael L. Harris
    Assistant Federal Public Defender
    500 State Ave, Suite 201
    Kansas City, Kansas 66101

I further certify that on this date the foregoing document and the notice of electronic filing were mailed by first-class mail to the following non-CM/ECF participants:

None.

        s/ Kim I. Martin
        KIM I. MARTIN, #13407
        Assistant United States Attorney