08-20062-CM    USA V CHANNING BURGESS

1                 UNITED STATES DISTRICT COURT
                      DISTRICT OF KANSAS
2
   UNITED STATES OF AMERICA,      Docket No.08-20062-CM
3
      Plaintiff,                  Kansas City, Kansas
4                                 Date: 8/20/08
      v.
5
   CHANNING BURGESS,
6
      Defendant.
7    ...................

8                        TRANSCRIPT OF
                   MOTION TO SUPPRESS HEARING
9          BEFORE THE HONORABLE CARLOS MURGUIA,
                UNITED STATES DISTRICT JUDGE.
10
   APPEARANCES:
11
   For the Plaintiff:    Kim Martin
12                        Asst. US Attorney
                          360 US Courthouse
13                        500 State Avenue
                          Kansas City, KS  66101
14
   For the Defendant:    Michael Harris
15                        Asst. Federal Public Defender
                          201 US Courthouse
16                        500 State Avenue
                          Kansas City, KS  66101
17
   Court Reporter:       Nancy Moroney Wiss, CSR, RMR, FCRR
18                        Official Court Reporter
                          558 US Courthouse
19                        500 State Avenue
                          Kansas City, KS  66101
20
   Proceedings recorded by machine shorthand, transcript
21   produced by computer-aided transcription.

22

23

24

25

                NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM     USA V CHANNING BURGESS

1            THE COURT:  Court calls Case
2   Number 08-20062.  It's a case entitled the United States
3   of America versus Channing Burgess.  The parties please
4   enter their appearance.
5            MS. MARTIN:  Your Honor, the United States
6   appears by Kim Martin.
7            MR. HARRIS:  Judge, Mr. Burgess is present
8   in court personally and with counsel Michael Harris.
9            THE COURT:  Mr. Burgess, we're here because
10  on your behalf, your attorney has filed a motion to
11  suppress evidence.  I would let the parties know, court
12  prior to our hearing has had the opportunity to review
13  the motion, as well as the supporting documents that
14  were provided to the court, as well as the government's
15  response to defendant's motion to suppress evidence.
16  The court is ready to proceed.  Government ready to
17  present their evidence.  Mr. Harris.
18            MR. HARRIS:  Judge, I want to make a couple
19  of points for the record before we go any further in
20  this matter, because quite frankly, I think the
21  presentation of additional evidence in the circumstances
22  of this case are both irrelevant and inappropriate.  As
23  the court is familiar, the case of Whitely versus
24  Wyoming State Penitentiary which we've had some
25  litigation about in a recent case basically and is still

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1   the law -- the Supreme Court law, Fourth Amendment

2   jurisprudence.  The warrant in this case stands or falls

3   on the application made to the issuing magistrate,

4   whether that be by affidavit or by accompanying sworn

5   testimony.  Any consideration of evidence outside that

6   document is inappropriate for the purposes of this

7   hearing.  This is not a situation, Judge, in which a

8   warrant was sought and issued based upon something that

9   was observed during a traffic stop and evidence has to

10  be admitted to determine the constitutional validity of

11  the underlying traffic stop, or a protective sweep

12  situation where evidence has to be offered on the

13  underlying constitutionality of the protective sweep.

14  The search warrant application in this case is quite

15  detailed.  It comprises almost 40 pages submitted to

16  Judge Waxse by Mr. Kanatzar back in August of 2007.  It

17  contains multiple definitions, detailed factual

18  description of the investigation that was conducted, and

19  the rationale tendered by Mr. Kanatzar for the issuance

20  of the warrant in the first instance.  I attached a copy

21  of the warrant that I had received from the government

22  by way of discovery.  I have it -- there is nothing in

23  the government's responsive pleading that would indicate

24  or allege that the application that was attached to my

25  motion was either incorrect or erroneous or that

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1   additional information was presented to Judge Waxse.  If

2   there was additional testimony presented to Judge Waxse,

3   I have not been made aware of it nor have I been

4   provided copies of it.  It's my understanding from Miss

5   Martin that government wants to introduce evidence today

6   on two distinct points relating to the motion that I

7   filed.  The first is the factual matters that are

8   alleged in Page 8 of the government's response pleading

9   dealing with what the banner pages of this particular

10  web site looked like and what information it contained

11  prior to an individual being given the opportunity to

12  join and pay the subscription fee.  Upon first reading

13  of that, I didn't recall reading anything like that in

14  the warrant application.  I went back through the

15  warrant application, and I couldn't find anything even

16  close to what is alleged beginning at Line 3.  It's the

17  top paragraph of that Page 8 of the document dealing

18  with, this is what you've been looking for; goes on to

19  state, in our Lolita paradise, your sweet dreams will

20  come true, on and on and on.  I didn't recall seeing

21  anything in the warrant affidavit, and along those lines

22  reviewed the warrant affidavit in my -- at least the

23  copy that I was provided did not contain such averments.

24  And I also noted that there isn't any citation by the

25  government in that portion of their response pleading to

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM     USA V CHANNING BURGESS

1  any part of the record that supported the issuance of

2  this search warrant.  So, if it's not in the warrant, I

3  think it's improper for the court to consider here, even

4  if that is in fact what the banner pages do state.

5  There certainly was an opportunity to have included that

6  in the nearly 40 page warrant application, and if it was

7  not done either by mistake or oversight, this is not the

8  time and place to rehabilitate the application that was

9  submitted to Judge Waxse.  The second point that I think

10 that Miss Martin had indicated to me that she wanted to

11 have additional evidence on relates to the definitions

12 that Mr. Kanatzar included in the warrant application

13 relating to dynamic and static internet protocol

14 addresses.  Specifically, in the definitional section

15 which would be at Page 15, Sub-paragraph E, and that

16 would be Paragraph 12 E specifically, Mr. Kanatzar

17 defines what an internet protocol address is, and

18 outlines that there are two types of internet protocol

19 addresses that are utilized by internet service

20 providers, which is defined I think in Sub-paragraph D.

21 He describes both dynamic and static internet protocol

22 addresses, the IP address, and specifically defines

23 static IP addressing as, on the other hand, some ISP's

24 including most cable providers employ static IP

25 addressing.  That is, a customer or subscriber's

08-20062-CM      USA V CHANNING BURGESS

1  computer is assigned one IP address that is used to

2  identify each and every internet session initiated

3  through that computer.  In other words, a static IP

4  address is an IP address that does not change over a

5  period of time, and is typically assigned to a specific

6  computer.

7            THE COURT:  For the record, what are you

8  referring to, what page?

9            MR. HARRIS:  I am referring to Page 16 of

10  the warrant application.  It is Paragraph 12 --

11  Paragraph 12 E which sets forth the definitions of the

12  technical terms that are used throughout the affidavit.

13  At Paragraph 27 of the warrant application, that is at

14  Page 26 of the affidavit that was submitted in support

15  of that, Mr. Kanatzar stated the following:   Internet

16  record checks on the IP address of 24.124.88.184 and the

17  IP address 66.45.139.124, each of those whole numbers

18  being separated by a period, reveal that these IP

19  addresses are owned by internet service provider

20  Sunflower Broadband in Lawrence, Kansas.  Sunflower

21  Broadband records show that IP address 24.124.88.184 is

22  currently subscribed to by Channing Burgess at the

23  address -- and in our submission, Judge, consistent with

24  the privacy policies of this court, we deleted the

25  address, but that was Mr. Burgess's address in Lawrence,

08-20062-CM      USA V CHANNING BURGESS

1    Kansas.  So, I think that I argued in my moving papers

2    that under the definitions that were provided to the

3    issuing magistrate by Mr. Kanatzar and the Sunflower

4    records -- Sunflower Broadband records showing that the

5    address that began with the Number 24 was subscribed to

6    Channing Burgess, I think the conclusion is inescapable

7    that that is static.  Now, I think that Miss Martin

8    wants to introduce evidence to indicate that Sunflower

9    Broadband uses both static and dynamic internet protocol

10   addresses.  However, I think that is improper, because

11   that information was not included in the information

12   submitted to the issuing magistrate.  Now, if there was

13   other information that was submitted to the issuing

14   magistrate that I am unaware of, then I obviously would

15   like to be made aware of it, and then we can deal with

16   that accordingly.  But I did not have any indication

17   from the government that the document that I submitted

18   and represented to the court to be the warrant

19   application, the warrant itself, and the return on the

20   warrant, I have no indication that those were not the

21   exclusive information that was submitted to Judge Waxse

22   to justify issuance of the warrant.  So, I think the

23   taking of further evidence on those points is both

24   irrelevant and improper.  The warrant stands or falls on

25   what was submitted to the issuing magistrate.

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM     USA V CHANNING BURGESS

1          THE COURT:  As a preliminary matter,
2    defendant's counsel has brought certain items to the
3    court's attention.  I'd ask if the government has a
4    response to what's been raised by Mr. Harris.
5          MS. MARTIN:  Your Honor, I agree, the
6    affidavit stands or falls on its own.  The evidence that
7    the government sought to admit today basically was to
8    clear up factual inaccuracies in the defendant's
9    submissions.  The defendant has drawn conclusions based
10   upon his reading of the affidavit that are inaccurate.
11   The definition of static and dynamic IP address is
12   correct.  I would just proffer to the court that what I
13   expect the testimony would be is that the two IP
14   addresses listed in the affidavit were both dynamic,
15   meaning they can be assigned to other people; that it is
16   not unusual for somebody to have the same IP address for
17   months at a time, because the way their system works at
18   the Sunflower Broadband Cable is that when you log on to
19   your computer, their system will give you the last IP
20   address that you used unless somebody else is using it.
21   And that is why just because at the date and time that
22   the subpoena was returned -- that's what's referenced in
23   Paragraph 27 -- at the date and time that the subpoena
24   request was responded to, the IP address, which is the
25   24.124.88.184 IP address, was subscribed to the

08-20062-CM     USA V CHANNING BURGESS

1    defendant at that date and time.  Now, that's not to say
2    that he could have logged off his computer that evening
3    and when he went to log on the next day, somebody else
4    was using that IP address.  But so long as no one else
5    is using that IP address, he will get that same IP
6    address returned to him.  And that really is the essence
7    of what I would have the -- the witness from Sunflower
8    Cable testify about.  I don't think that the -- there
9    has been any allegation that there is false or
10   misleading information in the affidavit.  So, I believe
11   that the agent, at the very least -- first of all, I
12   want to say I believe that there's probable cause here.
13   I think that the fact -- that the facts stated in the
14   affidavit provide probable cause.  However, if the
15   agents were wrong, they presented that information to
16   Magistrate Waxse and asked him to make a determination
17   whether or not the probable cause existed.  And
18   therefore, I think that the affidavit -- the agents
19   would be allowed to a good faith reliance on the -- the
20   issuance of this warrant.  As a practical matter, Judge,
21   as far as the evidence is concerned, I've proffered the
22   evidence that I believe corrects the factual inaccuracy
23   made in the defendant's submission, but we're happy to
24   have the witness testify if the court thinks that's
25   necessary.  With regard to the other testimony, I

08-20062-CM      USA V CHANNING BURGESS

1    believe that the paragraph submitted or referenced by

2    the defendant regarding the -- the "Home Collection"

3    which would be Page 24, Paragraph 22, it discusses the

4    member home site and what was contained on the member

5    home site.  So, I don't believe that there was any

6    attempt to mislead the court based on that.  I do

7    believe that there was some discussion about the three

8    different times that the agents logged onto the -- to

9    the banner page and were directed on how to join.  I

10    think that was fully discussed in the affidavit.  We

11    just wanted to provide any information that the court

12    would like to hear.

13              THE COURT:  I have a question for you.

14              MS. MARTIN:  Yes.

15              THE COURT:  Regards to Mr. Harris's

16    statement that he doesn't believe that the affidavit

17    included the information that was in the banner page.

18              MS. MARTIN:  Your Honor, it did not -- it

19    was not detailed in the affidavit.  The government -- I

20    put that in my response in order to more fully explain

21    why the defendant would have known.  I think defendant's

22    argument in his papers corresponded to those arguments

23    that were made in the Candyman investigations, which

24    were, mere associations with web sites that turn out to

25    be child porn can't support probable cause.  My argument

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM     USA V CHANNING BURGESS

1   was this wasn't a blind purchase.  Defendant knew what

2   he was purchasing, and we did not put that in the

3   affidavit.  I don't think it needed to be in the

4   affidavit.  That really was more argument on behalf of

5   the government to show the defendant was knowingly

6   purchasing access to a child pornography site, and

7   wasn't joining a site whose content could not be known.

8                THE COURT:  Thank you.

9                MS. MARTIN:  Uh-huh.

10               MR. HARRIS:  If I might respond just

11   briefly, Judge.

12               THE COURT:  Yes.

13               MR. HARRIS:  If the government wants to

14   argue that there are some other conclusions to be drawn

15   from the definition that Mr. Kanatzar set forth in

16   Paragraph 12 E and the recitation of the results of the

17   request of Sunflower Broadband concerning those two

18   specific internet protocol addresses, government is

19   certainly free to do so.  But I think that at this point

20   in time, it would be improper to add -- to offer the

21   court additional factual information with respect to the

22   Sunflower Broadband issuing practices that was not

23   presented to the issuing magistrate.  As the court can

24   tell from this affidavit, this was a rather lengthy

25   investigation.  First attempts to access this site

08-20062-CM     USA V CHANNING BURGESS

1  occurring in December -- November, December of 2006;

2  warrant application being made in August of 2007.  So, I

3  think there was ample opportunity for everybody to get

4  together what the facts are with respect to the business

5  practices of Sunflower Broadband concerning how it

6  issues internet protocol addresses.  Government -- as I

7  indicated, if the government wants to argue some

8  contrary inference, then I think that it can certainly

9  do so.  Given the definitions and the information

10  contained in Paragraph 27, I think it's difficult to

11  reach any other conclusion other than the one that I

12  reached in our moving papers.  But if the government

13  wants to try, that's fine.  Judge, I think the whole

14  point of the Candyman cases and the series of cases that

15  were generated in the Candyman investigation, the

16  critical point was whether or not the information

17  contained in the warrant application would leave a court

18  to conclude that it was obvious to anyone reading it

19  that the person was knowingly joining a site that

20  trafficked in child pornography.  The United States

21  versus Martin, the Second Circuit case, is a perfect

22  example of that.  Mr. Martin had joined the Sub-E group

23  that was titled 12-16girls.com or dot something or

24  other, and had a rather graphic description of what that

25  particular group was involved in, and I believe the

08-20062-CM     USA V CHANNING BURGESS

1   Martin panel, quote, stated, and I think I can quote,

2   unabashedly claimed to be involved in child pornography.

3   Now, that information was in the warrant application.

4   And so, that was available to the issuing magistrate and

5   the district court, and the Second Circuit were

6   reviewing the decisions based on what was contained in

7   the warrant application.  In the Gourde case, the Ninth

8   Circuit en banc case that is cited in our brief,

9   Mr. Gourde had subscribed to a web site that was named

10  Lolitagurls.com.  That was in the warrant application.

11  Also in the warrant application in Gourde was the fact

12  that the agent had identified the operator of the

13  particular web site in question, had searched his

14  computer.  That is, in fact, how they got to Mr. Gourde.

15  And the operator of the web site told them, and this was

16  all included in the warrant affidavit in the Gourde

17  case, that his site was basically commercial child

18  pornography operation.  And so, the Ninth Circuit

19  concluded under those circumstances that this was not

20  just someone stumbling onto something or joining

21  something that they didn't know what they were getting

22  into.  Now, compare that with the Coreas case which is

23  also a Second Circuit case which seriously criticized

24  the Martin decision.  In the Coreas case, Mr. Coreas had

25  only joined the first Candyman group, had not joined the

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1    sub-group girls- or girls12-16.  The Coreas court felt

2    compelled by the analysis of the Martin court to uphold

3    that, despite the fact that the Candyman web site

4    umbrella web site was in many respects rather innocuous,

5    and that one might not know that it was a child

6    pornography distribution site, as one would obviously

7    know in the sub-group girls12-16.  The Martin court in

8    the petition for re-hearing basically said, well, I

9    think that the Coreas court misread our decision in --

10   original decision in Martin, because that girls12-16 was

11   the critical factor in determining the existence of

12   probable cause.  Now, the way that's important in this

13   case is, there is nothing in the warrant application

14   itself that discloses what is revealed on the banner

15   pages when one goes -- sets out to subscribe to this

16   particular web site.  You have got "Home collection" as

17   the, quote, umbrella site.  The sub-sites, I believe

18   they were like 12 or 15 of them, some of them were more

19   obviously child pornography than others, but the Sexy

20   Angels that Mr. Burgess is accused of having joined,

21   that isn't -- no specific reference to any kind of child

22   pornography.  So, that's why that's important.  And the

23   warrant to search Mr. Burgess's computer, the analysis

24   of that has to come from the four corners of this

25   particular affidavit.  And I'm assuming that the

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1   government concedes that there wasn't anything else

2   submitted to Judge Waxse other than what was contained

3   in the copy of the warrant application that was attached

4   to my initial pleading in the first place.  Now, as I

5   indicate, Judge, we did delete, pursuant to the district

6   court privacy rules, certain identifying information

7   with respect to Mr. Burgess - his address, his phone

8   number, other things.  If the court wants an un-redacted

9   affidavit submitted to it for purposes of, you know,

10  resolving this issue or ruling on this motion, I don't

11  have any problem with that.  Unfortunately, something

12  happened to all my original copies, and all I've got

13  left are the ones that I redacted the identifying data.

14  I'm sure the government has another one.  But I would

15  have no problem with that admitted, say, as an exhibit

16  in the case, just so the record is clear what was -- you

17  know, the totality of what was included in the affidavit

18  submitted to Judge Waxse.

19          THE COURT:  Anything else from the

20  government?

21          MS. MARTIN:  Your Honor, I believe that

22  the -- first of all, we'd be happy to submit that as an

23  exhibit if the court wants to look at it.  It may be

24  part of the court file, in any event.  If it's not,

25  we'll certainly make that available.  I think that

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1   the -- the differences between Candyman and these

2   investigations are stark, in that Candyman, as I

3   indicated in my papers, is an E group.  Basically,

4   anybody can join.  Anybody can post to it.  You or I or

5   anybody could post to it.  And that's spelled out in the

6   cases that are referenced by the defendant.  And these

7   cases -- this case here is a for-profit paid --

8   pay-to-join web site.  So, it is -- and the affidavit

9   makes clear that purchases were made from this web site,

10  and those purchases contained images of child

11  pornography.  And those images are described in the

12  affidavit.  So, the magistrate wasn't without knowledge

13  of the contents of this site.  The magistrate looked at

14  the evidence, found that the evidence was sufficient to

15  issue a search warrant for the defendant's residence,

16  believing that the -- the PayPal records that gave the

17  defendant's name and address and what site he had

18  purchased access to, which was the Sexy Angels web site,

19  and again, the images that were listed in the affidavit

20  came from that Sexy Image -- Sexy Angels web site, he

21  was able to determine then that there was enough

22  evidence to issue a warrant to search the defendant's

23  house to see whether or not he had actually, in fact,

24  made that purchase, if there was evidence to show that

25  he had downloaded any images and was in possession of

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1    child pornography, whether there was any evidence of the
2    financial transaction that took place.  Again, I think
3    the key is that this is a for-profit.  You have to pay
4    to look at this web site, not like Candyman.  And I
5    think that is a critical difference.  The key factor, I
6    believe, in whether or not to issue the search warrant
7    rests in the fact that the e-mail address corresponds to
8    the defendant's e-mail address.  If you're going to
9    purchase access to a child pornography site, or any site
10   for that matter, once you pay your money, they send you
11   a confirmation e-mail giving you a log-in ID and a
12   password that allows you to have access to that site,
13   and then send that to your e-mail address.  So, the only
14   way the defendant would be able to have access to that
15   site is if he provided them with his correct e-mail
16   address, which he did.  And I think, Your Honor, that
17   the evidence is sufficient to warrant the issuance of
18   this warrant in this case.
19          MR. HARRIS:  Just one final observation, if
20   I might, Judge.  The -- the principle underlying the
21   government's argument is that any -- any subscription
22   web site, any web site that requires someone to pay some
23   kind of a monthly fee to join puts a person on notice
24   that it is a child pornography web site.  I don't think
25   there's anything in the warrant affidavit to support

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1    that, certainly not any empirical data in the warrant

2    application to support that.  But that is, at the end of

3    the day, the basis of the government's argument - he

4    paid $79 to join a web site; therefore, that web site

5    must have contained child pornography.  That's simply --

6    umm, there's no basis for that.  That's conjecture of

7    the most base kind.  And that is at the heart of it,

8    what this case is all about, whether or not the 40 page

9    affidavit contains sufficient or any probable cause.

10   And I think the issue of good faith, while those are

11   intertwined, we did not brief that, because I really

12   kind of thought we probably needed to get to the point

13   of whether or not the affidavit contained probable cause

14   before arguing about whether the good faith exception of

15   United States versus Leon and the cases following the

16   Leon case would salvage this if the court determined

17   there was not probable cause.  But we can cross that

18   threshold when we get there.  If the court finds

19   probable cause, then the good faith issue becomes moot

20   at that point in time.  But I think before arguing that,

21   we ought to at least get to that first threshold point.

22   And as I indicated, there is nothing in the warrant

23   affidavit that is even remotely close to the factual

24   averments made by the government in their responsive

25   pleading.  If that is indeed the facts, those certainly

08-20062-CM     USA V CHANNING BURGESS

1    could have been included in the warrant application, and

2    this would be basically a bay horse case with both

3    United States versus Gourde and United States versus

4    Martin, and we would be arguing that those would be

5    wrongly decided.  Instead, they are in fact

6    distinguishable.  The fact of the matter is, Judge, that

7    the information presented to the magistrate dealt with a

8    joining of a web site with an umbrella name of "Home

9    Collection."  Now, how that would give someone notice

10   that they were subscribing to some kind of a child

11   pornography web site is beside me.  The specific

12   sub-group that Mr. Burgess is alleged to have subscribed

13   to, Sexy Angels, could be virtually anything.  It could

14   be pictures of adult women dressed up as angels.  We

15   simply don't know.  There's certainly nothing like

16   Lolita or Lolita girls or 12-16 that one would

17   automatically conclude that something under the

18   reference of Sexy Angels constituted child pornography.

19   So, we are left basically with the fact that Mr. Burgess

20   is alleged to have subscribed to this Sexy Angels web

21   site.  Therefore, based on the fact of subscription

22   alone, he should have known and everybody else can

23   conclude that it was, in fact, child pornography, and I

24   don't think that is an appropriate inference.  It is

25   unsupported by the facts and unsupported by any kind of

08-20062-CM      USA V CHANNING BURGESS

1   deductive reasoning process that I would be familiar

2   with.  Thank you.

3           THE COURT:  Anything else from the

4   government?

5           MS. MARTIN:  Umm, I would say that the

6   government's argument isn't just that he subscribed to

7   this site.  It's that the affidavit shows that there

8   were 60 undercover purchases from that site, and in each

9   of those cases, in each one of those 60 undercover

10  purchases that are contained in the affidavit, child

11  pornography was found on that web site.  And so, the

12  defendant --

13          THE COURT:  I'm sorry to interrupt you.

14  Now, is that in the affidavit?

15          MS. MARTIN:  Yes.  In the affidavit, it

16  indicates that there were 60 undercover transactions,

17  and as a result, they were able to identify ID

18  Number 1000 as the restricted site known as Sexy Angels,

19  and that they made purchases from Sexy Angels, and

20  that's where we get the description of the three images

21  that are in the affidavit where they describe the three

22  images of child pornography.  So, deducing from that,

23  Your Honor, I think that you can draw reasonable

24  inferences from the facts contained in the affidavit,

25  and I don't assume that the magistrate did not do that,

08-20062-CM      USA V CHANNING BURGESS

1   that defendant wasn't going to pay $80 to have access to

2   something he didn't know what he was getting.  You would

3   have to assume that he just decided to pay $80 to join

4   this site because he was generous.  I think he purchased

5   -- obviously, we -- we cannot assume that somebody buys

6   something without knowing what they're getting.  That's

7   why it's different from Candyman, in that that site was

8   a free site and you could just go on it without having

9   to pay.  That's detailed Sexy Angels, they were logged

10  onto on October the 5th of '06, November 28th of '06 and

11  January 19th of '07.  And as I said in my papers, on

12  each occasion, that web site contained images and video

13  files containing child pornography.

14          THE COURT:  Part of what defense counsel

15  brings up is the insufficiency of the warrant -- I mean

16  the application for the warrant.  One of the things that

17  was mentioned, I think we've all ready addressed this

18  before, was the fact that the banner information was not

19  included in the affidavit.  And I think you all ready

20  have responded to that.  But again, in order for me to

21  keep track of everything here, what was the government's

22  position and why they believe that the banner

23  information did not need to be in the affidavit?

24          MS. MARTIN:  Your Honor, I don't think the

25  banner page information is essential to whether or not

08-20062-CM        USA V CHANNING BURGESS

1    there's probable cause.  The banner page information

2    certainly would have given additional probable cause to

3    the magistrate, because it makes certain what defendant

4    was looking at prior to joining.  I don't think it -- it

5    makes a difference as to probable cause, because as I

6    said, the affidavit does describe what is contained on

7    the member site.  So, in other words, we have evidence

8    to show that he actually purchased membership to that

9    site, umm, and once he accessed that site, that

10   information is contained on the ban-- in the affidavit.

11   And as I said, it indicates that on each of the

12   occasions where the undercovers purchased access to the

13   member site, there was child pornography found.  So,

14   therefore, we did not get any information that would

15   indicate defendant -- we had no information to present

16   to the magistrate that defendant wasn't purchasing

17   something that he -- that he had knowledge of what he

18   was purchasing.  That it was some mystery.  There was

19   no -- for instance, in some cases, we have people who

20   get e-mail address-- they get e-mail -- SPAM'd e-mail,

21   they may call the police and say, I did not purchase

22   this, and I received this e-mail from this site, has

23   somebody stolen my credit card, somebody perhaps SPAM'd

24   my account.  This didn't happen in this case.  The

25   overall information, and I think that if you take the

08-20062-CM      USA V CHANNING BURGESS

1   affidavit as a whole, the information is unmistakable

2   that the defendant was paying.  It's not an

3   insignificant amount of money, 79.95, to purchase access

4   to a site that he knew was called Sexy Angels.  And he

5   would have known that because in the PayPal records, the

6   identifying ID number was 1000.  And that was corres--

7   that's what the agents were able to discover

8   corresponded to the Sexy Angels web site.  And then once

9   you -- once you pay for access to that site, then you're

10  into the -- the descriptions that we have in the

11  affidavit.

12            THE COURT:  Okay.

13            MS. MARTIN:  I don't know if the court wants

14  argument with regard to the -- the -- the good faith

15  exception, the Leon exception.  I think we briefed that

16  pretty well in our papers.  I believe -- I believe that

17  there is probable cause.  But as I said in my papers,

18  the agents here did what they're supposed to do, and

19  they provided that information to the magistrate, and I

20  think they have the right to rely on the magistrate's

21  determination that there was indeed probable cause.

22            THE COURT:  All right.

23            MR. HARRIS:  Judge, just so the record's

24  clear, there were 60 undercover transactions conducted

25  by Immigration Customs Enforcement with respect to this

08-20062-CM     USA V CHANNING BURGESS

1   "Home Collection" umbrella web site generally.  That's

2   the way I read the affidavit.  They were able to

3   identify in those 60 undercover transactions 23

4   different member restricted web sites which are

5   described at Page 22 as a part of Paragraph 18.  There

6   are a number of subject identifiers with respect to the

7   item number.  As I indicated in our moving papers, some

8   of those are obviously child pornography related.

9   You've got Underage Home, SpyCamLolitas, Lolivirgins;

10  other ones are not so obvious, got one named "Home

11  Collection", VideoShop CD 1 through 5, CP City -- I have

12  no idea what that means.  The three occasions that the

13  Number 1000, the Sexy Angels was subscribed to by

14  Immigration Customs Enforcement were on the dates set

15  out on Paragraph 24, and that resulted in -- excuse me,

16  Page 24, Paragraph 21, and that resulted in the

17  description of the contents of "Home Collection" Sexy

18  Angels that's found at Paragraph 22.  That refers to the

19  sections of news, photos, video software message boards

20  cancel or re-billed, goes on to talk about the number of

21  images and what images were on that that matches the

22  definition of child pornography.  But there weren't 60

23  separate visits to the Sexy Angels member restricted web

24  site, as I understand the affidavit.  There were 60

25  overall identifying the 23 other -- 22 other member

08-20062-CM     USA V CHANNING BURGESS

1  restricted web sites to which one could subscribe.  If

2  the court wants -- I did not file a response pleading on

3  the issue of good faith.  If the court wants me to do

4  something in that regard, I will be happy to do so.

5           MS. MARTIN:  Your Honor, that's correct.

6  And I think in the affidavit, there were actually three

7  different purchases -- undercover purchases of the Sexy

8  Angels web site.  The point in the affidavit I think

9  that's important is that the -- the purchases were --

10  were done both before and after the defendant's

11  purchase.  Defendant's purchase was in December, I

12  believe, of 2006, and there were purchases both before

13  and after the defendant's purchase, and that -- and the

14  point I think that's spelled out in the affidavit and

15  the important point is the web site did not change.  The

16  content of the web site remained the same.  And that

17  there -- on each occasion when the agent purchased

18  membership, they were able to determine that it

19  contained child pornography.

20           THE COURT:  Anything else?

21           MR. HARRIS:  I don't think so, Judge.

22           THE COURT:  If you give me a moment, please.

23           (Court recessed.  Proceedings resumed.)

24           THE COURT:  Back on the record.  Court took

25  a recess after counsel's arguments in regards to the

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1    preliminary issue that was raised by defendant's

2    counsel.  Mr. Harris began the hearing by expressing his

3    position that he didn't believe the government should be

4    allowed to present additional evidence, and

5    specifically, in the areas that were not addressed in

6    the government's -- the affidavit that was filed as it

7    relates to the search warrant that was executed

8    involving this case.  The court's considered the

9    arguments from both counsel in regards to that, and also

10   what was incorporated was also defendant's counsel's

11   belief that there was a lack of sufficient information

12   given to the magistrate when in fact the warrant was

13   issued.  The court understands the government's position

14   in regards to that.  After consideration of not only

15   your arguments today, but also the court's review of the

16   motion to suppress evidence as well as the government's

17   response, the court's position today would be that court

18   believes that there may be some merit to the defendant's

19   position that the application for the search warrant

20   lacked sufficient information.  That being the case,

21   before the court rules on the motion to suppress

22   evidence, the entire motion to suppress evidence, court

23   is going to request that the parties provide additional

24   briefing on the availability of the good faith

25   exception.  With that in mind, I know we have the

08-20062-CM        USA V CHANNING BURGESS

1    parties here and possibly witnesses present.  I'd offer

2    to the government the option of either presenting their

3    evidence regarding the good faith exception today or

4    waiting, which probably might be the better course,

5    until after the briefing has been provided to the court,

6    and the court would continue our hearing to another date

7    after that.  In regards to the government's position,

8    Miss Martin, do you want to present your evidence now or

9    do you want to wait?

10             MS. MARTIN:  I think, Your Honor, it would

11   be best to wait 'til after the briefing.  I believe the

12   only witness regarding that -- that issue would be the

13   agent, and we would not be required to bring anybody

14   else in.

15             THE COURT:  What I'd ask, if counsel knows

16   their schedules, that if I gave the government another

17   week in which to provide the court with briefing -- I

18   don't know what date, Jennifer, that would be.  Today's

19   the 20th, so the 27th, is that right?

20             MS. WALTON:  Yes, one week, Wednesday, the

21   27th.

22             MS. MARTIN:  Your Honor, I'm actually

23   supposed to be out of town.  Our office meeting is the

24   27th and 28th, and obviously, there's a holiday.  If I

25   could have until Friday the 5th.

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM     USA V CHANNING BURGESS

1          THE COURT:  Give the government until

2   September 5th?

3          MR. HARRIS:  That's fine.  In fact, Judge, I

4   was going to ask for maybe a little longer than a week.

5   We picked up five cases yesterday alone, and so, we're

6   kind of in a crunch time-wise with the changes in

7   personnel that are going on in our office.  So, if I

8   could have two weeks from the September 5th date, that

9   would be really helpful to me.

10          THE COURT:  Well, in light of the

11   government's schedule as well, why don't I give -- if

12   there's no objection -- government until the 12th of

13   September, and then your two weeks after that would be

14   the 26th.

15          MR. HARRIS:  That would be fine.  That would

16   be fine, Judge.

17          THE COURT:  And then we'll schedule a

18   hearing after that.  We'll check our schedule, but a

19   week or so after.

20          MR. HARRIS:  That's fine.  Judge, just for

21   the court's information, starting the first of October

22   -- well, probably starting the second week of October,

23   I'm going to be out on some medical leave.  I've had a

24   history of sun damaged skin, I'm melanin deprived and

25   have red hair and blue eyes, from when I was a child out

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1    in the sun all the time.  I'm going to do a -- what

2    basically amounts to a chemical peel.  So, I'm going to

3    be out of the office some of the time from probably the

4    second week of October toward probably the end of

5    October.  But I can be here.  It's just I'll be all red

6    and splotchy and would scare widows and small children.

7    So, I can be here anytime during that period of time,

8    but I'm trying to kind of limit my schedule because it

9    is -- it takes about three weeks to go through this

10   thing start to finish.  I've been delaying it for about

11   a year in light of Mr. Dedmon's issues with his being

12   struck by lightning, didn't think I could take time off

13   with Mr. Dedmon's situation the way it was, but I've got

14   to get this done, and so, I decided to do it like the

15   first part of October.  But I won't be out of the office

16   until like the second -- I'll probably start like the

17   first of October, but I won't be out of the office until

18   like the second week.  But I can come in during the

19   second week, you can -- warn everybody, you can ask me

20   what's wrong with this face.  So, I'll look rather odd,

21   but I've been down this road in 1993, so I'm used to it.

22   So....

23              THE COURT:  Sorry to hear about that.

24              MR. HARRIS:  So far, everything's just been

25   sun damage, silver keratonin.  It's precancerous.  Got

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1   to take care of 'em before they turn into basil cell

2   carcinoma.  So, just a matter of chemically sanding the

3   dead skin off my face.  Feels like somebody takes your

4   ears and ties them together behind the back of your head

5   by the time you get finished.  It's not fun, but --

6           THE COURT:  Well, how about October 3rd?

7           MR. HARRIS:  That would be fine, Judge.

8           THE COURT:  Miss Martin?

9           MS. MARTIN:  That would be fine.  What time

10  would you like to do that?

11          THE COURT:  9:30?

12          MR. HARRIS:  That would be fine.

13          THE COURT:  All right.  Well, that --

14          MR. HARRIS:  Government September the 12th

15  and me the 26th?

16          THE COURT:  Right.  We'll make that our

17  schedule for right now regards to what the court has

18  requested.  So again, keeping that in mind, we'll be

19  back on October 3rd at 9:30 unless notified otherwise.

20  If there's nothing else, this hearing's adjourned.

21  Thank you.

22          MR. HARRIS:  Thank you, Judge.

23          (Whereupon, court recessed proceedings.)

24

25

NANCY MORONEY WISS, CSR, RMR, CRR

08-20062-CM      USA V CHANNING BURGESS

1

2

3                    C E R T I F I C A T E

4

5

6     I, Nancy Moroney Wiss, a Certified Shorthand Reporter

7  and the regularly appointed, qualified and acting

8  official reporter of the United States District Court

9  for the District of Kansas, do hereby certify that as

10 such official reporter, I was present at and reported in

11 machine shorthand the above and foregoing proceedings.

12    I further certify that the foregoing transcript,

13 consisting of 31 typewritten pages, is a full, true, and

14 correct reproduction of my shorthand notes as reflected

15 by this transcript.

16    SIGNED August 22, 2008.

17

18              _____

19              Nancy Moroney Wiss, CSR, CM, FCRR

20

21

22

23

24

25


                NANCY MORONEY WISS, CSR, RMR, CRR