1                UNITED STATES DISTRICT COURT
                     DISTRICT OF KANSAS
2

UNITED STATES OF AMERICA,       Docket No.08-20062-CM
3
     Plaintiff,                 Kansas City, Kansas
4                               Date: 10/2/08
      v.
5

CHANNING BURGESS,
6
     Defendant.
7    ...................

8                        TRANSCRIPT OF
             MOTION TO SUPPRESS HEARING - CONT'D
9           BEFORE THE HONORABLE CARLOS MURGUIA,
                UNITED STATES DISTRICT JUDGE.
10

APPEARANCES:
11
For the Plaintiff:   Kim Martin
12                   Asst. US Attorney
                     360 US Courthouse
13                   500 State Avenue
                     Kansas City, KS  66101
14
For the Defendant:   Michael Harris
15                   Asst. Federal Public Defender
                     201 US Courthouse
16                   500 State Avenue
                     Kansas City, KS  66101
17
Court Reporter:      Nancy Moroney Wiss, CSR, RMR, FCRR
18                   Official Court Reporter
                     558 US Courthouse
19                   500 State Avenue
                     Kansas City, KS  66101
20

Proceedings recorded by machine shorthand, transcript
21  produced by computer-aided transcription.

22

23

24

25

1        THE COURT:  Just give me a moment.  Give me

2   a moment please.  Let the record show we're here

3   regarding Case Number 08-20062.  It's entitled United

4   States of America versus Channing Burgess.  The parties

5   please enter their appearance.

6        MS. MARTIN:  Your Honor, the United States

7   appears by Kim Martin.

8        MR. HARRIS:  Judge, Channing Burgess is

9   present in court personally and with counsel Michael

10  Harris.

11        THE COURT:  For the parties' benefit,

12  defendant had filed a motion to suppress evidence, which

13  was Document 13.  As the parties are aware, we had all

14  ready conducted, my memory is, most of the hearing.  At

15  the conclusion of our last court appearance, the court

16  mentioned that it wanted the parties to brief the issue

17  of the good faith exception without ruling that probable

18  cause was absent, but kind of mentioned that there was

19  some interest by the court in whether or not probable

20  cause had been indicated in regards to the execution of

21  the warrant.  In any case, the court has reviewed what's

22  been brought to the court's attention based on it's

23  request.  At this time, the parties care to make any

24  additional argument or highlight any arguments in

25  regards to our motion?  Miss Martin?

1       MS. MARTIN:  Your Honor, I think the

2  government's pretty much spelled out in its brief the

3  position that it takes.  Clearly, we believed that

4  probable cause existed to the extent -- and by we, I

5  mean the United States attorney's office believed

6  probable cause existed to a sufficient degree to warrant

7  taking it to the magistrate judge.  The magistrate judge

8  also believed that probable cause existed to a

9  sufficient degree that he was willing to put his name on

10  the warrant and authorize the search of the defendant's

11  house.  Given those circumstances, Judge, I do not

12  believe that we can suppress this evidence.  There's no

13  allegation that the agents hid information from the

14  court or put recklessly false information in the

15  affidavit.  There's no allegation that the judge was not

16  neutral and detached.  So, then it boils down to whether

17  or not the affidavit was sufficient, had sufficient

18  facts to support the probable cause.  And obviously,

19  since the government believed that that was the case,

20  and the judge also found that was the case, we can't ask

21  the agents to second guess those two entities.  The

22  agents did exactly what we asked them to.  We do not

23  like the agents to go out and -- and search places

24  without warrants, even in some exigent circumstances.

25  But in this case, when the agents come to the court and

1  they give the court the information that it has, and

2  they ask the court to take a look at the information and

3  find -- determine whether probable cause exists, then

4  suppression of that evidence is not -- is a punishment,

5  not of the right people.  If the court was wrong, if the

6  prosecutor was wrong in its determination, we are not

7  going to deter police misconduct by suppressing evidence

8  in this case.  I would like to correct just one factual

9  record regarding the banner pages.  Banner pages change

10 from week to week, month to month.  So, leaving those

11 out is a function of having had -- having had them in

12 before, and facing the -- the allegation by defense

13 counsel that those banner pages aren't the exact same

14 banner pages as when the defendant sought to purchase

15 the items.  So, even if we had put that information in

16 the affidavit, that wouldn't prove what the defendant

17 says it would prove.  In other words, the undercovers,

18 they go on line, they look at the banner pages.  And we

19 can say that's what they look like on that date and

20 time.  We can't testify what they look like at the date

21 and time that the defendant made his purchase.  And so,

22 then, that leaves the agents subject to the attack that

23 you don't know what it looked like when defendant

24 purchased access to that web site.  And that's the case.

25 Your Honor, this web site was proven -- was shown to

1    contain child pornography through other investigations.

2    We found information that the defendant used his credit

3    card, purchased access to this site for $80, and I think

4    that the court was free to draw rational conclusions

5    from the evidence presented in that affidavit.  The

6    rational conclusion is, you don't buy something for $80

7    without knowing what you're buying.  So, I -- government

8    still believes probable cause exists.  But even if the

9    court believes that it did not exist, the agents in this

10   case did everything that we asked of them.  We asked

11   them to come to the courts and get permission before

12   they enter somebody's house, and they did that in this

13   case.

14          MR. HARRIS:  If I might just briefly

15   respond, Judge.

16          THE COURT:  Yes.

17          MR. HARRIS:  The subscription in question in

18   this case according to Paragraph 20 of the warrant

19   application occurred on December 18 of 2006.  Umm, and

20   there was a time on there, the specific time and the

21   other information that's contained in Paragraph 20 of

22   the warrant application.  At Paragraph 21 of the warrant

23   application, Mr. Kanatzar states to the issuing

24   magistrate that immigration and customs agents had

25   accessed the member restricted web sites on October 5th,

1  2006, November 28th, 2006, and January 19, 2007.  Those

2  immigration and customs enforcement activities accessing

3  that site bracketed the time that the subscription in

4  question from the computer IP address that begins with

5  65 --  and I don't remember the other four numbers --

6  66.45.139.124.  Obviously, the agents in their

7  repetitive access to this web site had -- and I think

8  the -- the warrant refers to that, there was -- there

9  were multiple of those, I don't remember whether it was

10  60 or 90, but there were literally dozens of times that

11  the immigration and customs various agents accessed the

12  web site.  So, they would have had to have been aware of

13  the banner pages, and even if the banner pages changed,

14  if the banner pages changed from say like, oh, one

15  visual depiction of child pornography to some other

16  depiction of child pornography, it wouldn't change the

17  fact that the banner pages disclosed beyond any question

18  prior to the active subscription what someone was

19  subscribing to.  Now, like I said, obviously, the agents

20  had to have gone through that process in these multiple

21  accesses to this web site, including the dates alleged

22  in the warrant affidavit in October, November of '06 and

23  January of '07.  Now, at the time this warrant

24  application was made, which I believe was in the summer

25  of 2007, there had been several years worth of

1  litigation in various circuits around the country.  I

2  think one of the decisions in the candyman cases

3  actually referred to it as a cottage industry of

4  litigation with respect to either joining E groups or

5  joining subscription only web sites that were child

6  pornography related.  And as I indicated in both our

7  initial moving papers and our subsequent moving papers,

8  that any fair reading of those cases, the line of

9  demarcation between probable cause and absence of

10  probable cause is that the subscriber had to be aware at

11  least, there was probable cause to believe that at least

12  the subscriber was aware prior to committing the act of

13  subscription that he was joining a group that basically

14  catered to those with an interest in child pornography.

15  Now, the decision to omit, whether it was made by the US

16  attorney's office or Mr. Kanatzar, the decision to omit

17  any reference in the warrant application to the banner

18  pages was obviously an intentional one.  At some point,

19  somebody simply thought it was unnecessary.  Well, that

20  is inconsistent with the then existing prevailing cause

21  law.  That was in fact the essential component of the

22  probable cause question.  That's issue Number 1.  And

23  under Leon, when there is an intentional omission from a

24  warrant application, that in and of itself is sufficient

25  to allow the court to find that there isn't any good

1    faith.  In other words, the parties submitting warrant
2    applications to magistrates should be held accountable
3    for at least having some familiarity with the law of
4    probable cause with respect to the object of the search.
5    They can't just omit and then come back in and go, oh,
6    well, we didn't think it was necessary, the judge found
7    probable cause anyway.  I don't think it's fair to ask
8    Judge Waxse to look at this search warrant affidavit, go
9    to the books himself, and determine what is or isn't
10   necessary from a legal point of view.  That is the
11   obligation of the parties submitting the application to
12   the magistrate to make sure the I's are dotted and the
13   T's are crossed.  If they make an intentional decision
14   to omit the one critical factor, it seems to me
15   fundamentally inconsistent to come back and say, oh,
16   well, good faith anyway.  That's issue Number 1.  Issue
17   Number 2 relates to the two different internet provider
18   addresses that are delineated in the warrant
19   application.  Under the definitions that were submitted
20   as a part of the warrant application in this case,
21   Mr. Kanatzar alleged that internet provider addresses
22   are unique.  I think his exact words were like a phone
23   has a unique phone number.  Now, in the warrant
24   definitions, internet providers who use static internet
25   addresses, IP addresses that their records -- their

1   records would reflect which of their subscribers was

2   using a specific IP address at any specific date and

3   time.  That's the way that they're able to track back to

4   a specific computer.  And with the static internet --

5   internet IP address, the subscriber has one, and one

6   only.  Now, for example, if I'm out in Colorado visiting

7   a friend, and we're just -- for lack of anything to do

8   on an afternoon are rummaging through eBay, and I find a

9   vintage poster of a Rolling Stones concert from the Let

10  It Bleed Tour in 1969, and I put a bid in on it from his

11  computer, and at the close of the bidding cycle, mine is

12  the highest bidder and I buy it, and I pay for that

13  through a PayPal account, now I'm paying for it, so I'm

14  going to use my name, my credit card number, my billing

15  address, my e-mail address, but the computer records as

16  to the computer from which that order was generated is

17  going to be the IP address of the computer I used, not

18  necessarily my home computer.  And that's also critical

19  in this case, because the warrant seeks authority to

20  search defendant's home and seize his computer, not to

21  search his computer wherever it might be found, but to

22  search defendant's home.  In that regard, it is -- goes

23  without saying that the warrant application has to

24  establish probable cause to believe that seizable items

25  are going to be in the place for which search authority

1    is sought.  So, in this case, the only information we

2    have about the home computer maintained by Channing

3    Burgess is it has a different IP address than the

4    computer used to generate the subscription in question.

5    Now, that leads -- under the definitions and limitations

6    in the warrant application, that leads to one

7    inescapable conclusion, whether it was Channing Burgess

8    or someone utilizing Channing Burgess's credit card, the

9    subscription to this account did not come from a

10   computer associated with Channing Burgess's home.  There

11   is simply no other conclusion to be drawn.  As such, the

12   warrant is completely lacking in reason to believe that

13   images of child pornography are going to be located on

14   Channing Burgess's home computer contained within his

15   residence.  And that is, at the end of the day, the

16   fundamental question.  And we think that for both of

17   those reasons, Number 1, I think that the failure to

18   include anything with respect to the banner pages and

19   the questions relating to the various IP addresses, I

20   think the only conclusion to be drawn is that the

21   warrant lacks probable cause to justify the search of

22   Mr. Burgess's home.  And that gets us to the good faith

23   exception.  And we've got two independent grounds to

24   defeat the good faith exception upon which it is the

25   government's burden to establish, and that is, Number 1,

1  it was an intentional decision at some level to omit any

2  reference to the banner pages.  Now, you know, I don't

3  know what kind of an excuse it is that, well, you know,

4  we don't know what the specific banner pages were on the

5  date in December 16th.  I believe it was -- well, they

6  knew on October 5th, November 28th, and January 19th.

7  They could have easily included in the warrant

8  application that banner pages change.  We've accessed

9  this on this date, this date and this date.  Banner

10 pages change.  But despite the changes, each of the

11 banner pages clearly discloses prior to subscription

12 that this is a site that traffics in child pornography,

13 and could have set out what those changes were and what

14 the banner pages actually showed, because that was

15 information that was readily available to 'em.  They had

16 seen it.  They had apparently saved those pages as a

17 part of the investigative file, as part of the proffer

18 that Miss Martin made to the court last time we were

19 here.  Umm, so, I don't know that's much of an excuse.

20 But that intentional omission is enough in and itself.

21 But I think with the key issue being, you know, is there

22 some substantial basis in the warrant to -- for the

23 court to conclude that seizable evidence or contraband

24 that is images of child pornography are likely to be

25 found in Channing Burgess's residence?  It wholly fails,

1  because there is no connection to the subscribing

2  computer to Channing Burgess's home.  In fact, it's

3  exactly the opposite.  Under the definitions in the

4  warrant application, the subscribing computer could not

5  have been in Channing Burgess's home.  So, we would urge

6  the court to grant defendant's motion and grant the

7  relief requested.  And that's all I have, unless the

8  court has further questions.

9          THE COURT:  Anything else from the

10  government?

11          MS. MARTIN:  Your Honor, I think the

12  defendant misstates the evidence.  I don't believe that

13  what he just said is accurate or true.  I believe the

14  evidence shows contrary to that, and I just would answer

15  any questions the court has.  Your Honor, I know that

16  the court's ready to rule, but I would like to make just

17  one more comment if that would be all right.

18          THE COURT:  Yes.

19          MS. MARTIN:  The defendant tries to lump

20  this case in with the candyman cases and the E group

21  cases, and I think it's misleading to do so.  E groups

22  are a totally different animal than this case.  An E

23  group is free to join, and you can have an E group out

24  there that said I love cats, and you join this E group,

25  and you get on it, and you find out it means I like

1    having sex with cats.  That's different.  Because in
2    this case -- in these kinds of cases, you actually have
3    to pay to have access to it.  You know what you're
4    getting before you pay for it.  Otherwise, no one would
5    pay for it.  You have to get out your credit card, you
6    have to give information, and you have to make an effort
7    to join the type of site that you want to have.  And
8    it's just like I said in my responsive papers.  You're
9    not going to go into a store and ask to be charged $80
10   and not know what you're getting.  I think it's
11   reasonable to assume that if you go out there and you
12   pay money to join a site, that you're going to know what
13   you're buying.  So, I think that is misleading to say
14   that.  Secondly, I think it's important for the court to
15   know that in the affidavit, the e-mail address -- when
16   the defendant signed up for this site, he has to provide
17   an e-mail address so that the company can send to him a
18   password and a log-in ID.  That e-mail address belongs
19   to him at that address, and it used his IP address,
20   current IP address that was assigned to him.  So, I do
21   believe there was evidence there.  And finally, my last
22   comment, Your Honor, is about the omission of the banner
23   pages.  This case was an -- a national operation,
24   hundreds of thousands of people were targeted in this
25   national operation.  By definition, not everything known

1  to the government or to the investigators was contained

2  in that affidavit.  The issue is not whether it was

3  omitted or whether there was sufficient probable cause

4  even without its omission, and that's all I have, Your

5  Honor.  Thank you.

6          MR. HARRIS:  Judge, United States versus

7  Gourde of the United States en banc decision decided

8  over a before concerning a subscription only web site.

9  I believe, in that one, it was Lolitagirls.com, and

10  advertised itself as a child pornography purveyor.  So,

11  whether it's an E group that wanted joining or a

12  subscription only web site, the question remains the

13  same, does the warrant affidavit itself establish that a

14  person would reasonably know the content of the site

15  prior to its being joined.  Government argues, you don't

16  buy something unless you know what you're buying.  Well,

17  we all know that things on the internet are always

18  exactly as they are represented to be; oh, yes, indeed.

19  But in any event, finally, the subscription on

20  December 18, 2006 that's referenced at Paragraph 20

21  does -- and we have -- we have acknowledged all along

22  that it utilizes Mr. Burgess's name, his e-mail address,

23  his billing address, etcetera, etcetera, etcetera.

24  There is no reference in Paragraph 20 to the IP address

25  that Sunflower Broadband had assigned to Channing

1   Burgess's home computer.  The IP address given in

2   Paragraph 20 is 66.45.139.124.  There is nothing,

3   absolutely nothing in the warrant application that

4   connects that IP address with Channing Burgess's home.

5   The only IP address reflected in the warrant connected

6   to Channing Burgess's home is the number in Paragraph 27

7   that shows that Sunflower Broadband had subscribed to

8   Channing Burgess the IP address of 24.124.88.184.  If

9   those are indeed unique, as represented by Mr. Kanatzar

10  in the definitional section of the warrant application,

11  that is the only number that Sunflower Broadband

12  assigned to Channing Burgess, and there is no factual

13  even allegation with respect to the other IP address,

14  other than that it is also owned by Sunflower Broadband.

15  Now, as I indicated in my final -- final part of our

16  good faith response, the only way that any rational

17  conclusion could be drawn connecting IP address

18  66.45.139.124 was if the court concluded that Channing

19  Burgess was the only person subscribing to the internet

20  service through Sunflower Broadband, because if he was

21  the only person, then it would be conceivable that he

22  could have used both of those two addresses owned by

23  them.  That is simply preposterous that Channing Burgess

24  was the only person subscribing to internet access

25  through Sunflower Broadband.  That's all I have.

1        THE COURT:  Anything else from the

2   government?

3        MS. MARTIN:  I would just point the court to

4   Paragraph 26, in which the e-mail account that was used

5   to subscribe to this site comes back to the defendant,

6   and that IP address was being accessed through the 24 IP

7   address which was assigned to the defendant.

8        THE COURT:  Anything else from defendant?

9        MR. HARRIS:  No, Judge.  Well, actually,

10  Judge, yes.  I think that that reinforces our argument

11  that the only IP address ever associated with Channing

12  Burgess's residence is not the IP address that was used

13  in the subscription.

14        THE COURT:  Anything else from the

15  government?

16        MS. MARTIN:  Your Honor, the defendant, when

17  he signs up, has to provide his e-mail address in order

18  to get access to the paid site.  The e-mail address

19  corresponds to the IP address assigned to the defendant

20  at his residence.  And so, the government's argument

21  there is when he signed up to pay for that web site, he

22  put in his e-mail account so that he could get access to

23  the site.  Without an e-mail address, he's never going

24  to get his money's worth, so he's not going to be able

25  to get access to the site unless the company can send

1  him to his e-mail address the password and log-in ID.

2  And if they can't do that, he's out $80.  So, that IP

3  address is significant in that it -- it corresponds to

4  the -- the defendant's e-mail address.

5         THE COURT:  Anything else, Mr. Harris?

6         MR. HARRIS:  Nothing further, Judge.

7         THE COURT:  If there's nothing else, court

8  is ready to rule.  Court has reviewed the evidence

9  that's been provided in regards to this motion, and the

10  parties' original briefs as well as supplemental briefs

11  on the good faith exception.  Court has also

12  incorporated the arguments that were made this morning,

13  and again, after careful consideration, court is now

14  prepared to rule.  The defendant is asking the court to

15  suppress evidence found during a search of his residence

16  pursuant to an August 16th, 2007 search warrant.  He

17  claims the warrant was not supported by probable cause.

18  And specifically, during our last hearing, defendant

19  argued government has no more evidence of actual receipt

20  of child pornography here, than many of the candyman

21  cases that are set out in case law.  Defendant argued

22  that before the court may infer that defendant received

23  child pornography, the court must determine how much

24  defendant knew at the time he joined the sexy angels web

25  site, court can determine whether defendant joined

1   intentionally and knowingly.  Government argued that the
2   cost of joining the web site here combined with the
3   number of steps defendant had to take to join supports
4   probable cause to believe that defendant would not have
5   done it without knowing what defendant was doing, and
6   later downloading and receiving illegal materials.  At
7   the conclusion of our last hearing, court mentioned to
8   the parties that it did have some thoughts, or I don't
9   know if concerns is the right word about the sufficient
10  showing of probable cause in regards to the application
11  for the warrant.  As such, it did ask that the parties
12  also provide the court with that supplemental briefing
13  in regards to the good faith exception.  Probable cause
14  exists where attending circumstances would lead a person
15  to believing there's a fair probability that evidence of
16  a crime will be found in a particular place.  To
17  determine whether probable cause supports a warrant, the
18  court assesses the sufficiency of the supporting
19  affidavit based on the totality of the circumstances,
20  giving great deference to the issuing judge's
21  determination that probable cause supported the warrant.
22  Defendant argues that the computer from which the
23  subscription was purchased had an IP address with no
24  demonstrable relationship to defendant's home.
25  Specifically, defendant points out that the IP address

1    from which the subscription was purchased was

2    66.45.139.124.  Although the affidavit states that this

3    IP address was assigned to defendant's internet provider

4    at the time, Sunflower Broadband, the affidavit did not

5    otherwise connect that IP address to defendant's

6    computer on December 18th, 2006.  In fact, the affidavit

7    only connects defendant's computer to another IP address

8    on later dates; 24.124.88.184 from May 2007 through

9    June 2007.  The affidavit does not specify whether the

10   IP addresses are static or dynamic; that is, whether

11   they were addresses that did not change over time or

12   whether they were addresses that were shared among a

13   group of users.  The affidavit does, however, state that

14   most ISP's employ dynamic IP addressing.  Defendant

15   claims that the warrant lacked probable cause because it

16   contained no factual connection between IP address

17   66.45.139.124 and defendant's residence.  Court finds

18   this argument unavailing.  Although the application did

19   not contain a direct statement that IP address

20   66.45.139.124 was used at defendant's residence on

21   December 18th, 2006, the magistrate judge relied on a

22   permissible inference that it was used at defendant's

23   address -- address in the absence of records showing

24   what IP address was used on that date.  Defendant argues

25   that in the affidavit from Agent Kanatzar, that at

1  Paragraph 12 E, that it is not a permissible inference

2  because in that paragraph, it states that every computer

3  or device on the internet is referenced by a unique

4  internet protocol address the same way every telephone

5  has a unique telephone number.  Court would note that

6  its review of that paragraph, further in that paragraph,

7  it also states that most ISP's employ -- it's

8  highlighted -- dynamic IP addressing.  That is, they

9  allocate any unused IP address at the time of initiation

10  of an internet session, each time a customer or

11  subscriber accesses the internet, which would appear to

12  support a permissible inference.  Further supporting the

13  inference is that in the fact that defendant's name,

14  e-mail address, home address and phone number was used

15  to order the subscription.  Before applying for a

16  warrant, agents took a number of measures to investigate

17  defendant's address and verify that defendant in fact

18  lived at the address.  These facts in conjunction with

19  Agent Kanatzar's sworn statements that persons involved

20  in receiving child pornography normally keep it in their

21  residence or other secure location offer a substantial

22  nexus between the place to be searched and the suspected

23  criminal activity.  The court finds that the lack of a

24  direct connection between the 66.45.139.124 IP address

25  and defendant's home did not render the affidavit

1  insufficient to establish probable cause.  Defendant

2  further argues that in order to justify a search of his

3  home, the warrant application must establish that

4  defendant knew the web site to which he was subscribing

5  contained child pornography prior to subscribing.  The

6  defendant points out that the agents did not have

7  information that he had ever accessed the web site from

8  his computer or downloaded any content.  Defendant also

9  sites to cases known as the quote, candyman, end quote,

10  cases, which involved a free social networking group

11  where the invitation to join stated, quote, this group

12  is for people who love kids.  You can post any type of

13  message -- message you like to, or any type of pic and

14  bids you like to.  PS, if we all work together, we will

15  have the best group on the net, end quote.  In the

16  candyman cases, several courts expressed concern that

17  merely logging onto the candyman web site and clicking a

18  button to join did not give probable cause to search

19  homes for child pornography.  Court would refer to

20  United States versus Coreas, at 419 Fed 3rd, 151, a

21  Second Circuit case from 2005.  Here, the web site

22  defendant joined was not a free social networking group.

23  It required members to pay a $79.95 fee before gaining

24  access.  Members also had to take more steps to gain

25  access than candyman members had to take.  The

1    government contends that it defies common sense to

2    assume that defendant made a purchase costing nearly $80

3    without knowing what he was buying.  The question is

4    whether this evidence gives probable cause to believe

5    that defendant possessed illegal child pornography in

6    his home.  Based on the evidence before it and the

7    totality of the circumstances, the court finds that the

8    warrant was not supported by probable cause.  The web

9    site's name of sexy angels does not have any specific

10   child pornography connotation.  Neither does its parent

11   site, home collection.  Although the affidavit contains

12   considerable information about the actual content of the

13   sexy angels web site once accessed, the affidavit lacks

14   information about how defendant knew what he was

15   purchasing when he signed up.  The court does not accept

16   the government's argument that defendant wouldn't have

17   spent nearly -- would not have spent nearly $80 without

18   knowing what he was purchasing.  To make this argument

19   more credible, the affidavit could have contained more

20   information about defendant's monetary means and/or

21   statistics on how many people buy a subscription but

22   never access the web site.  Without information in the

23   affidavit about what defendant saw before he signed up

24   for the membership, the court cannot find that it was

25   reasonable to conclude defendant's computer would

1   contain illegal images.  Based on the affidavit,
2   therefore, the court determines that the warrant was not
3   supported by probable cause.  Court next moves to
4   whether the good faith exception of United States versus
5   Leon at 468 US 897, 1984 case, applies to prevent
6   suppression of the evidence found as a result of the
7   search.  When law enforcement officials act in good
8   faith and reasonable reliance on a search warrant, the
9   evidence obtained during the search should not be
10  suppressed even if the warrant lacked probable cause.
11  The good faith exception is based on the purpose of the
12  exclusionary rule which is to deter improper police
13  action rather than punish errors made by magistrate
14  judges.  The court affords a magistrate judge's
15  determination great deference, and officers are
16  generally not required to second guess the magistrate
17  judge's decision to grant a warrant.  That said, in
18  Leon, the Supreme Court found four situations in which
19  an officer cannot be found to have relied in good faith
20  on a warrant.  Number 1, the issuing magistrate judge
21  was misled by an affidavit that the affiant knew was
22  false or would have known was false but for his reckless
23  disregard of the truth.  Number 2, the magistrate judge
24  wholly abandoned his judicial role.  Number 3, the
25  affidavit was so lacking in indicia of probable cause as

1  to render an official's belief that it existed entirely

2  unreasonable.  Number 4, the warrant was so facially

3  deficient, the officers could not have reasonably

4  presumed it valid.  Defendant argues that the first and

5  third situations are present here.  First, he submits

6  that the quote, banner pages, end quote, information was

7  omitted from the warrant application either

8  intentionally or recklessly.  The government stated in

9  the first hearing on this motion that it believed the

10  information to be unnecessary.  Defendant draws from

11  this statement the inference that the officer

12  intentionally omitted the banner pages' information from

13  the application.  But while Agent Kanatzar may have

14  participated in the conscious decision to omit the

15  information, it does not follow that Agent Kanatzar

16  intentionally or recklessly misled the magistrate judge.

17  While Agent Kanatzar may have been incorrect in his

18  suggestion that the affidavit established probable cause

19  on its face, this is not a situation where he

20  intentionally or recklessly omitted information that if

21  disclosed might make the magistrate judge deny the

22  application for a warrant.  Rather, had Agent Kanatzar

23  included the information, it would appear to only have

24  strengthened the application, and in this case

25  situation, likely supported a probable cause finding.

 1   In support of defendant's argument regarding the third

 2   situation, defendant claims that the affidavit lacked

 3   indicia of probable cause because it contained no

 4   factual connection between IP address 66.45.139.124 and

 5   defendant's residence.  The court previously found that

 6   the information contained in the affidavit established a

 7   substantial nexus between the place to be searched and

 8   the suspected criminal activity.  All that is required

 9   for a showing of good faith is a minimal nexus between

10   the place to be searched and the suspected criminal

11   activity which is easily satisfied here by the

12   information previously identified.  Court finds that the

13   executing officer's reliance on the warrant was

14   objectively reasonable.  For all of these reasons, court

15   determines that while the warrant lacked probable cause,

16   the good faith exception applies.  The agents in this

17   case conducted a thorough investigation before applying

18   for the warrant.  They verified the content of the web

19   site and defendant's identity and address in multiple

20   ways.  The magistrate judge agreed that the warrant

21   contained all that was necessary to support probable

22   cause, and agents are generally not required to second

23   guess the magistrate judge's determination.  Court,

24   therefore, denies defendant's motion to suppress.  Based

25   on the court's ruling, the court would find the next

1    court appearance would be the trial, and counsel, the

2    court's calculation of speedy trial time is that it

3    would expire on November 21st, 2008, and I don't know if

4    that's what your calendars indicate.  If that were to be

5    the case, the court would set this for trial on

6    November -- on its November 3rd docket.

7              MR. HARRIS:  Judge, in that regard, if the

8    court recalls when we were here last time, starting

9    probably Tuesday of next week and for probably the --

10   most of the rest of October, I will be out on medical

11   leave attending to some sun damaged skin issues.  So,

12   probably setting it on November 3rd would -- we would

13   end up filing a motion to continue at some point in time

14   on that, because like I said, I'm going to be out of the

15   office probably starting next Tuesday for probably at

16   least the next two and a half to three weeks, and it

17   might extend over to four.  So, I just wanted to remind

18   the court of that with respect to its setting.

19             THE COURT:  Miss Martin.

20             MS. MARTIN:  Your Honor, obviously I think

21   we need to set the case for trial to -- for the speedy

22   trial purposes, but government would not object to a

23   continuance if one is filed.

24             MR. HARRIS:  That's fine.  We can -- I'll

25   just make a note to myself to have -- sometime prior to

1    the -- probably the middle of October, we'll file a

2    motion.  I'll have Susan prepare one and have someone

3    else -- 'cause I mean, I'm not going to be available to

4    do trial preparation.  I think that would justify

5    excluding -- granting a continuance and excluding that

6    from the speedy trial calculations.

7            THE COURT:  Everything's noted for the

8    record.  In fact, Mr. Harris, you had in fact brought

9    that to the court's attention before.  In light of the

10   time that's expired, though, court is going to set it

11   for the November 3rd docket with the understanding that

12   it appears the government wouldn't have any objection to

13   you filing a motion for continuance.  Mr. Burgess, you

14   heard what your attorney had to say in regards to this

15   trial setting.  So, in all likelihood, there's going to

16   be a motion to continue filed on your behalf by

17   Mr. Harris, and if that's the case, after court receives

18   it and reviews it, finds that there's been a showing

19   that it meets the statute requirements, the court is

20   going to consider continuing your trial setting in

21   November to a later date.  And do you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  And you may want to talk to Mr.

24   Harris about that, but if it were to take place, then

25   that would mean your trial would not take place

1   November, but probably in all likelihood, sometime next

2   year.  You understand?

3                 THE DEFENDANT:  Yes, sir.

4                 THE COURT:  Do you have any objection to

5   that?

6                 THE DEFENDANT:  No, Your Honor.

7                 THE COURT:  All right.  Well, that's what

8   the court will do at this time.  Unless there's anything

9   else from the parties, this hearing's adjourned.  Thank

10  you.

11                MS. WALTON:  Court is in recess.

12                (Whereupon, court recessed proceedings.)

13

14

15

16

17

18

19

20

21

22

23

24

25

NANCY MORONEY WISS, CSR, RMR, FCRR

1
2
3                    C E R T I F I C A T E
4
5
6      I, Nancy Moroney Wiss, a Certified Shorthand Reporter
7  and the regularly appointed, qualified and acting
8  official reporter of the United States District Court
9  for the District of Kansas, do hereby certify that as
10 such official reporter, I was present at and reported in
11 machine shorthand the above and foregoing proceedings.
12     I further certify that the foregoing transcript,
13 consisting of 29 typewritten pages, is a full, true, and
14 correct reproduction of my shorthand notes as reflected
15 by this transcript.
16     SIGNED May 29, 2009.
17
18                    S/_____
19                    Nancy Moroney Wiss, CSR, CM, FCRR
20
21
22
23
24
25