1              UNITED STATES DISTRICT COURT
                  DISTRICT OF KANSAS
2

   UNITED STATES OF AMERICA,      Docket No.08-20062-CM
3
      Plaintiff,                  Kansas City, Kansas
4                                 Date: 2/2/09
       v.
5

   CHANNING BURGESS,
6
      Defendant.
7    ....................

8                         TRANSCRIPT OF
                     CHANGE OF PLEA HEARING
9          BEFORE THE HONORABLE CARLOS MURGUIA,
              UNITED STATES DISTRICT JUDGE.
10

   APPEARANCES:
11

   For the Plaintiff:    Kim Martin
12                        Asst. US Attorney
                          360 US Courthouse
13                        500 State Avenue
                          Kansas City, KS  66101
14

   For the Defendant:    Michael Harris
15                        Asst. Federal Public Defender
                          201 US Courthouse
16                        500 State Avenue
                          Kansas City, KS  66101
17

   Court Reporter:       Nancy Moroney Wiss, CSR, RMR, FCRR
18                        Official Court Reporter
                          558 US Courthouse
19                        500 State Avenue
                          Kansas City, KS  66101
20

   Proceedings recorded by machine shorthand, transcript
21 produced by computer-aided transcription.

22

23

24

25

1      THE COURT:  Court next calls Case Number

2   08-20062.  It's a case entitled United States of America

3   versus Channing Burgess.  The parties please enter their

4   appearance.

5      MS. MARTIN:  Your Honor, the United States

6   appears by Kim Martin.

7      MR. HARRIS:  Judge, Channing Burgess is

8   present in court personally and with counsel Michael

9   Harris.

10      THE COURT:  Mr. Harris, if you and your

11   client will please approach the podium.  Mr. Burgess,

12   I've been told that you're here today to change your

13   plea from not guilty to guilty to Count 2 of the

14   indictment, which is charging you with a violation of

15   Title 18 United States Code Section 2252 A 4 B, and

16   that's a charge of being in possession of child

17   pornography.  Is that what you want to do?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  What I need to let you know is

20   that the court needs to ask you a number of questions,

21   and with regards to those questions, I need for you to

22   answer out loud as to what your responses are.  You can

23   say yes, no, whatever it is you have to say, but please

24   make sure you speak up so the court can hear what you're

25   saying.  At any time, if before you answer, you'd like

1    to speak to your attorney, Mr. Harris, you can do so.

2    You just need to let me know.  Also at any time, if I

3    ask you a question, if you don't understand what I'm

4    asking you, again, you just need to let me know so I can

5    try to explain better.  Do you understand all that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  The reason why the court's going

8    to ask you all these questions is the court needs to be

9    certain that you understand what you're doing here

10   today, that understand what this charge is that you're

11   pleading guilty to, the consequences that could take

12   place based on you pleading guilty to that charge, and

13   also the court needs to be certain that you're doing

14   this of your own free will, that no one's forcing you to

15   do something that you don't want to do.  Do you

16   understand that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  At this time the court is going

19   to swear you in to tell the truth, so I need for you to

20   raise your right hand.

21             (Defendant sworn.)

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Thank you.  Put your hand down.

24   At this time the court needs to let you know that you're

25   now under oath to tell the truth, and if you answer any

1  of the court's questions falsely, your answers may later
2  be used against you in another prosecution for perjury
3  or making a false statement.  Do you understand that?
4            THE DEFENDANT:  Yes, sir.
5            THE COURT:  Would you please state your full
6  name?
7            THE DEFENDANT:  Channing Stewart Burgess.
8            THE COURT:  Your age.
9            THE DEFENDANT:  23.
10           THE COURT:  The last year of school you
11  would have completed?
12           THE DEFENDANT:  12th grade.
13           THE COURT:  In regards to Count 2 of the
14  indictment, which is charging you with possession of
15  child pornography, prior to our hearing, did you have a
16  chance to review a copy of the indictment?
17           THE DEFENDANT:  Yes, sir.
18           THE COURT:  Did you read to your -- for
19  yourself the charge as it's set out in Count 2 of the
20  indictment?
21           THE DEFENDANT:  Yes, sir.
22           THE COURT:  Did Mr. Harris also go over that
23  charge with you?
24           THE DEFENDANT:  Yes, sir.
25           THE COURT:  Did he inform you of what that

1    charge was about?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  Did he also inform you of the

4    possible consequences that could take place based on you

5    pleading guilty to that charge?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  Are you requesting that the

8    court read to you the entire charge as it's set out in

9    Count 2 of the indictment?

10        THE DEFENDANT:  No, sir.

11        THE COURT:  Mr. Harris, is it your statement

12   to the court that you've gone over Count 2 with your

13   client, and you've informed him of the nature of the

14   charge as well as the consequences that could take place

15   based on your client entering a guilty plea to that

16   charge?

17        MR. HARRIS:  I have, Judge, yes.

18        THE COURT:  At this time Mr. Burgess, how do

19   you plead to Count 2, guilty or not guilty?

20        THE DEFENDANT:  Guilty.

21        THE COURT:  And I understand that's why

22   you're here.  I would let you know, though, at this

23   point in the hearing, the court is going to inform you

24   that under the law, you have a right to plead not guilty

25   to this charge, and that if you chose to plead not

1  guilty, then you'd have the following constitutional
2  rights apply to your case.  Do you understand that if
3  you pled not guilty, you'd have the right to a speedy
4  and public trial by a jury?
5          THE DEFENDANT:  Yes, sir.
6          THE COURT:  And do you understand that at
7  that trial and at all stages of the proceedings, you'd
8  have the right to the assistance of a lawyer?
9          THE DEFENDANT:  Yes, sir.
10          THE COURT:  And you also understand that if
11  there was a trial, you'd have the right to see and hear
12  all witnesses that might be called to testify against
13  you, and that you'd have the right to cross-examine,
14  which means to question those witnesses?
15          THE DEFENDANT:  Yes, sir.
16          THE COURT:  And do you also understand that
17  if there was a trial, you'd have the right to use the
18  power of the court to bring forward any evidence in your
19  favor, including calling any witnesses that might
20  testify on your behalf?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  Do you also understand that if
23  there was a trial, you'd have the right not to be
24  compelled to incriminate yourself by taking the witness
25  stand, and that if you chose not to testify, then that

1  fact could not be used against you?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  Do you also understand that at a

4  trial, your innocence would be presumed until such time,

5  if ever, that the government established your guilt

6  beyond a reasonable doubt to the satisfaction of a judge

7  or jury?

8         THE DEFENDANT:  Yes, sir.

9         THE COURT:  Do you also understand that if

10  there was a trial, you'd have the right to appeal any

11  errors or mistakes that took place during your trial?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Now, do you understand these

14  rights that are guaranteed to you under the law if you

15  wished to plead not guilty?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And do you understand that by

18  entering a plea of guilty, you'd be waiving or giving up

19  all of these constitutional rights that I've just

20  explained to you?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And is that what you want to do?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you also realize that by

25  entering a plea of guilty, you'd be admitting all of the

1    facts alleged in the charge?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you also realize you'd be

4    waiving your right to a trial on this charge?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  In fact, do you understand there

7    would be no trial of any kind either before a court or a

8    jury?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you also realize that even

11   though you plead guilty, the court may still impose the

12   same punishment just as if you had pled not guilty,

13   stood trial, and been convicted by a jury?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  After going over these questions

16   involving your constitutional rights that you would have

17   if you chose to plead not guilty, at this time do you

18   still want to plead guilty to Count 2 of the indictment?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Need to let you know that by

21   pleading guilty, there's certain maximum penalties and

22   punishments you could receive.  I'm going to go over

23   those with you at this time.  Do you understand that you

24   could receive a term of imprisonment of not more than

25   ten years?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And that following your term of

3    imprisonment, you could receive a term of supervised

4    release of not less than five years and up to life?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And you also understand that you

7    could receive a fine of up to $250,000?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And do you understand that you

10   would be responsible for paying a $100 mandatory special

11   assessment?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now, do you understand that if

14   you have a prior conviction relating to aggravated

15   sexual abuse, sexual abuse, or abusive sexual conduct

16   involving a minor or a ward, then the maximum sentence

17   which may be imposed is not less than ten years nor more

18   than 20 years imprisonment?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And that following any term of

21   imprisonment, you could receive a term of supervised

22   release of not less than five years and up to life?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And that you could receive a

25   fine of up to $250,000?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  And that you would be

3   responsible for paying the $100 mandatory special

4   assessment?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Now, do you understand that the

7   offense that you're pleading guilty to is a felony

8   offense, and that if your plea is accepted, you will be

9   found guilty of that offense?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And do you understand that such

12  a finding may deprive you of valuable civil rights such

13  as the right to vote, the right to hold public office,

14  the right to serve on a jury, and the right to possess

15  any kind of firearm?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  At the time of this offense, the

18  one you're pleading guilty to, were you on probation or

19  parole in this or any other court?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Now, do you understand these

22  possible penalties and punishments you could receive by

23  pleading guilty?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And after having gone over them

1  with you, at this time do you still want to plead

2  guilty?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  The court's going to give you a

5  brief explanation of the sentencing guidelines.  United

6  States Sentencing Commission has issued guidelines for

7  judges to follow in determining the appropriate sentence

8  in a criminal case.  Have you and Mr. Harris discussed

9  how the sentencing commission guidelines might apply to

10  your case?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And do you understand the court

13  will not able to determine the guideline sentence

14  applicable to your case until after a presentence

15  investigation report has been completed and you and the

16  government have had an opportunity to challenge the

17  facts as record by the probation officer?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And do you understand that in

20  determining your sentence, the court has an obligation

21  to calculate the applicable sentencing guideline range

22  and to consider that range as well as consider possible

23  departures under the sentencing guidelines and other

24  sentencing factors under 18 United States Code Section

25  3553 A?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  You also understand that after

3   it's been determined what guideline applies to your

4   case, the court has the authority in some circumstances

5   to impose a sentence that is different than the sentence

6   called for by the guidelines?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  And do you understand there's no

9   limitation on the information the court could consider

10   at the time of sentencing concerning your background,

11   character, and conduct, provided that the information

12   was reliable?

13        THE DEFENDANT:  Yes, sir.

14        THE COURT:  Do you also understand this

15   includes relevant information relating to any counts

16   against you to which you've not pled guilty or been

17   convicted as well as all other uncharged related

18   criminal activity?

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  You also understand under some

21   circumstances, you or the government may have the right

22   to appeal any sentence that the court may impose,

23   subject to any waiver of appeal you may agree to in a

24   plea agreement?

25        THE DEFENDANT:  Yes, sir.

1          THE COURT:  After going over this brief

2     explanation of the sentencing guidelines, at this time

3     do you still want to plead guilty to Count 2?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Is your plea of guilty the

6     result of a plea agreement between yourself, your

7     attorney and government?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Is that correct, Mr. Harris?

10         MR. HARRIS:  That is correct, Judge, yes.

11         THE COURT:  What I'll do, Mr. Burgess, is

12    ask the government's attorney to say out loud for the

13    record what the plea agreement is, and when she's

14    finished, I'll ask you some questions over what she

15    says.  Miss Martin?

16         MS. MARTIN:  Your Honor, the defendant has

17    agreed to plead guilty to Count 2 of the indictment

18    which charges him with possession of child pornography.

19    The parties are requesting that the court use the United

20    States Sentencing Guidelines to determine the

21    appropriate guideline sentence in this case.  And the

22    parties are going to be requesting a sentence within

23    that guideline range.  The parties understand that in

24    order to apply the guideline range, the provisions of

25    relevant conduct will be applied.  The government has

1    agreed not to file any additional charges against the
2    defendant arising out of the facts and circumstances of
3    this case, to recommend a sentence at the low end of the
4    applicable guideline range, and to recommend that the
5    defendant receive his full three levels for his
6    acceptance of responsibility.  We advise -- we have
7    advised the defendant that the sentence will be
8    determined by the court, and the United States has not
9    made any promise or representations about what sentence
10   the defendant will receive.  The defendant understands
11   that he will not be allowed to withdraw his plea of
12   guilty, that he will be required to pay a special
13   assessment of $100, and he has agreed to waive his right
14   to appeal or to collaterally attack anything having to
15   do with his prosecution or sentence in this matter,
16   except that the defendant has reserved his right to
17   appeal the denial of his motion to suppress.  The
18   defendant also understands that as a result of this
19   conviction, he will be required to register as a sex
20   offender under the Sex Offender Registration and
21   Notification Act.  Your Honor, I believe that is the
22   essence of the plea agreement of the parties.
23              THE COURT:  Mr. Harris, is that your
24   understanding of the plea agreement?
25              MR. HARRIS:  Yes, Judge, it is.

1          THE COURT:  Mr. Burgess, is that your

2    understanding of the plea agreement?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Mr. Burgess, I am going to ask

5    you about a couple of the provisions of the plea

6    agreement if you have it there in front of you.

7    Paragraph 3 is entitled application of the sentencing

8    guidelines.  The first sentence reads, the parties

9    request United States Sentencing Guidelines be applied

10   by the court to calculate the applicable sentence in

11   this case, and that a sentence consistent with the

12   guidelines be imposed by the court.  Then it goes on and

13   says other things as well.  Prior to our hearing, did

14   you have a chance to go over this paragraph with your

15   attorney?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And after having gone over it

18   with him, at this time are you asking that the court

19   approve this paragraph as part of your plea agreement?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Paragraph 10 is entitled waiver

22   of appeal and collateral attack.  First sentence reads,

23   defendant knowingly and voluntarily waives any right to

24   appeal or collaterally attack any matter in connection

25   with this prosecution, conviction, and sentence, except

1  that the defendant reserves the right to appeal the
2  denial of his motion to suppress.  It then goes on and
3  says other things as well in that paragraph.  Again,
4  prior to our hearing, did you have a chance to go over
5  this paragraph with your attorney?
6              THE DEFENDANT:  Yes, sir.
7              THE COURT:  And after having gone over it
8  with him, are you asking that the court approve this
9  paragraph as part of your plea agreement?
10              THE DEFENDANT:  Yes, sir.
11              THE COURT:  And do you understand that if
12  the court were to approve that paragraph, you'd be
13  giving up your right to appeal anything having to do
14  with your prosecution, conviction, and sentence, except
15  as set out in that paragraph, the ruling the court made
16  on your motion to suppress, the fact that the court were
17  to depart upwards and out of the sentencing guideline
18  range, as well as the right to appeal the representation
19  you received as it relates to this plea?  But other than
20  those three exceptions, do you understand that you'd be
21  giving up your right to appeal anything else having to
22  do with your case?
23              THE DEFENDANT:  Yes, sir.
24              THE COURT:  And is that what you want to do?
25              THE DEFENDANT:  Yes, sir.

1    THE COURT:  And do you understand that if
2  you went to trial, you'd have the right to appeal any
3  errors or mistakes that took place during your trial?
4    THE DEFENDANT:  Yes, sir.
5    THE COURT:  Now, has anyone forced or
6  threatened you into agreeing to have this provision put
7  in your plea agreement?
8    THE DEFENDANT:  No, sir.
9    THE COURT:  Are you telling the court that
10  you're asking the court of your own free will to accept
11  this part of your plea agreement?
12    THE DEFENDANT:  Yes, sir.
13    THE COURT:  In the plea agreement, the
14  government agrees to make certain recommendations to the
15  court, but I want you to understand those are merely
16  recommendations, and that the final determination on any
17  of those will be made by the court.  Do you understand
18  that?
19    THE DEFENDANT:  Yes, sir.
20    THE COURT:  And so, if the court for some
21  reason should not go along with the recommendations made
22  by the government, do you understand that you would not
23  have the right to withdraw your plea of guilty then?
24    THE DEFENDANT:  Yes, sir.
25    THE COURT:  And do you understand that if

1  the sentence is more severe than you expected, you will

2  still be bound by your plea, and will have no right to

3  withdraw it?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  After going over these questions

6  involving your plea agreement, at this time do you still

7  want to plead guilty to Count 2?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Other than the plea agreement

10 that we've just gone over here in court, has anyone made

11 any sort of promise to you in order for you to enter

12 this plea of guilty?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Has anyone forced or threatened

15 you in order to get you to enter this plea of guilty?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Are you telling the court that

18 you're entering this plea of guilty freely and

19 voluntarily and of your own free will?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Are you telling the court that

22 the only reason that you're entering a plea of guilty to

23 this offense is because you are in fact guilty of the

24 offense charged?

25         THE DEFENDANT:  Yes, sir.

1    THE COURT:  Have you gone over with
2  Mr. Harris a petition to enter a plea of guilty?
3    THE DEFENDANT:  Yes, sir.
4    THE COURT:  Has he informed you of what's
5  contained in that petition?
6    THE DEFENDANT:  Yes, sir.
7    THE COURT:  Has he also informed you of the
8  consequences of you signing that document?
9    THE DEFENDANT:  Yes, sir.
10    THE COURT:  Now, do you have any questions
11  about any of the matters covered in that petition?
12    THE DEFENDANT:  No, sir.
13    THE COURT:  And do you understand the
14  answers you make to the questions in that petition as
15  well as the answers you've given the court today are all
16  being made under oath?
17    THE DEFENDANT:  Yes, sir.
18    THE COURT:  Mr. Harris, is it your statement
19  to the court you've gone over the plea petition with
20  your client, you've informed him of the contents of the
21  petition as well as the consequences of him signing that
22  document?
23    MR. HARRIS:  I have, Judge, yes.
24    THE COURT:  Mr. Burgess, if you've not
25  signed the petition, you may do so at this time.

1          (Defendant signing petition in open court.)

2          MR. HARRIS:  Judge, all parties have signed

3  the plea agreement.  I would note for the record, on

4  Page 1 and Paragraph 1, we made an interlineation change

5  with respect to Count 2.  It had been mis-numbered Count

6  1, the sixth line of the plea agreement.  Miss Martin's

7  initialed that as have I.  And that I've attached my --

8  or signed the certificate of counsel, and we would

9  tender both the original plea agreement and plea

10  petition to the court at this time.

11          THE COURT:  Mr. Burgess, at this time

12  court's going to ask the government's attorney to

13  represent what the government's evidence would have been

14  if this case had gone to trial.  I need for you to

15  listen to what she says, because when she's finished,

16  I'll ask you some questions over what she says.  Miss

17  Martin.

18          MS. MARTIN:  Your Honor, if this case were

19  to proceed to trial, the government's evidence would be

20  that in April of 2006, immigration and customs

21  enforcement's cyber crimes center, child exploitation

22  section, began an investigation into a criminal

23  organization operating a commercial child pornography

24  web site known as home collection.  The investigation

25  revealed that the same organization was operating

1    numerous commercial child pornography web sites.  In

2    addition, it was discovered that the organization used

3    various PayPal accounts to process payments for access

4    to the member restricted sites.  Agents were able to

5    locate the web site, and discovered the organization was

6    offering individuals monthly access to the restricted

7    web site for 79.99 per month.  It was learned that the

8    member restricted site solicited customers through an

9    advertising web site.  The member restricted site

10   communicated with its customer via several different

11   e-mail accounts including Belfast Limited at Juno.com.

12   ICE agents conducted over 60 undercover transactions in

13   order to gain access to the approximately 23 different

14   member restricted sites.  In each case, the ICE agents

15   accessed a specific advertising web site and were

16   redirected to an I-West payment web site.  The agents

17   were required to enter personally identifiable

18   information including credit card information.  After

19   completing the required information and hitting submit,

20   the agents were redirected to a second web page and were

21   informed that the payment was being processed.  On some

22   occasions, the agents were advised to check for further

23   information in the e-mail account provided by the agent

24   when he subscribed.  In those instances, the agents

25   received an e-mail message containing payment completion

1   instructions which included a hyper link to a PayPal

2   account.  On other occasions, the agents were

3   automatically redirected to a secure PayPal payment web

4   page, and the agent completed the transaction via a

5   PayPal account.  In both instances, the agents were

6   notified via e-mail that they had been accepted as

7   members, and were given the ability to access the member

8   restricted site.  Necessarily, that notification e-mail

9   was sent to the e-mail account provided by the agents

10  when they subscribed to the site.  From approximately,

11  June of 2006 to February of 2007, ICE agents identified

12  the numerous child exploitation advertising web sites

13  that used the I-West payment web site.  Further, ICE

14  agents worked to identify the subject identifiers and ID

15  numbers used by the PayPal accounts.  Agents then

16  analyzing the transactions logs obtained from PayPal

17  were able to discover the names and addresses of various

18  customers who purchased access to at least one of the

19  identified child pornography web sites.  One of the

20  customers identified in this manner was the defendant

21  Channing Burgess.  Records of PayPal revealed that on

22  December 18th of 2006, the defendant made a payment to

23  one of the identified PayPal accounts.  The payment was

24  for sexy angels in the amount of 79.95.  The PayPal

25  transaction logs provided the date of the purchase, the

1    time of the purchase, the defendant's name, the amount,

2    from the defendant's e-mail account at Yahoo.com to the

3    Belfast Limited at Juno.com e-mail address.  It provided

4    his first and last name, his primary e-mail address, his

5    primary street address in Lawrence, Kansas, and his

6    telephone.  Agents verified that the IP address and the

7    e-mail address that were listed in the transaction log

8    did in fact belong to the defendant.  They also verified

9    that the defendant -- the street address listed on the

10   PayPal transaction log corresponded with the defendant's

11   street address as well as his telephone number.  A

12   search warrant was then obtained for the defendant's

13   residence and his computer.  The agents discovered 15

14   movie files located on the defendant's computer which

15   depicted girls 6 to 12 years old engaged in oral sex,

16   sexual intercourse and graphic displays of the vagina.

17   Additionally, agents recovered approximately 47 imaged

18   files depicting child pornography.  In a sub-directory

19   titled pix back slash Laura, defendant had 21 imaged

20   files of a young girl between the ages of 12 and 13.

21   The Laura series has been fully identified by the

22   National Center For Missing and Exploited Children.  The

23   young girl shown in those images resides in Austria.

24   Necessarily, those images traveled in interstate

25   commerce to be located on the defendant's computer.

1    That would be the government's evidence, Your Honor.

2              THE COURT:  Mr. Burgess, do you agree with

3    what the government says it has in the way of evidence

4    against you on this charge?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Are you admitting to the court

7    that you did in fact do exactly what the attorney for

8    the government indicated?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And did you realize that what

11   you were doing was in violation of the law?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Have you received any treatment

14   recently for any type of mental illness or addiction to

15   narcotic drugs of any kind?

16             MR. HARRIS:  Mr. Channing's been in

17   counseling as a condition of his bond since his arrest

18   back in June of '08, and I believe he had had some

19   mental health counseling sometime earlier than that, but

20   he and I discussed that, so he's prepared to answer the

21   court's questions in that regard.

22             THE COURT:  Is that correct, Mr. Burgess?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Have you ever been in front of a

25   court that's made a finding in regards to whether or not

1   you're competent or not?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  Today, do you believe you

4   understand what's going on here?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  And also today, are you under

7   the influence of any drugs, alcohol, substance or

8   medication of any kind?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  Do you believe you're mentally

11  aware of what these proceedings are about?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  And as such, are you asking this

14  court of your own free will to accept your guilty plea?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Have you had a full opportunity

17  to speak with Mr. Harris regarding this charge against

18  you?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And after going over the matter

21  thoroughly with your attorney and learning the evidence

22  against you, have you decided that what you want to do

23  is enter a plea of guilty to this charge?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Is the decision to enter this

1    plea of guilty, is that your decision or Mr. Harris's?

2                THE DEFENDANT:  My decision, sir.

3                THE COURT:  Are you satisfied with the

4    advice and services of your attorney?

5                THE DEFENDANT:  Yes, sir.

6                THE COURT:  Do you have any complaints about

7    the way he's represented you?

8                THE DEFENDANT:  No, sir.

9                THE COURT:  Do you have any complaints about

10   the way the court has treated you so far?

11               THE DEFENDANT:  No, sir.

12               THE COURT:  Mr. Harris, as defendant's

13   attorney, do you know of any lawful reason why the plea

14   of guilty should not be accepted at this time?

15               MR. HARRIS:  There's no reason it should

16   not, Judge.

17               THE COURT:  If there's nothing else, court

18   is satisfied and finds defendant knowingly,

19   understandingly and voluntarily waives his

20   constitutional rights, that he's entering his plea of

21   guilty freely and voluntarily, that he understands the

22   nature of the charge, his rights in regards to the

23   charge, and also the consequences of his plea.  The

24   court further finds there is a factual basis for his

25   plea of guilty to the crime charged, that he was

1  mentally responsible at the time of the commission of

2  the offense, that he's mentally competent at this time

3  to enter his plea of guilty.  Therefore, defendant's

4  plea of guilty to Count 2 of the indictment is accepted,

5  and he is found guilty of the offense charged.  As I

6  mentioned before, Mr. Burgess, prior to you being

7  sentenced, a presentence investigation report needs to

8  be completed.  Someone from the probation office will

9  meet with you.  If you want, you can have your attorney

10 present.  Once they get their information, they complete

11 their report, you'll be notified.  You'll get a chance

12 to review the report, and if there's anything in there

13 you want to challenge and/or object to, you can do so up

14 to the time of your sentencing.  Your sentencing is set

15 for Monday, May 4th, 2009, at 10:30 in the morning.  My

16 understanding is that this is a mandatory detention

17 case.  Does counsel want to be heard in regards to that

18 or not?

19          MR. HARRIS:  Under the statute, Judge, that

20 is correct.  The pretrial services office in the status

21 report it filed is correct.  I would ask the court with

22 all due respect to consider allowing Channing to remain

23 at liberty on bond pending sentencing.  As the court can

24 tell from its observation of Mr. Burgess, he is a rather

25 slight, small individual.  He is one of the few people

1  I've had in recent memory who I am seriously concerned

2  about his physical well-being at CCA in light of the

3  nature of the offense which he entered his plea of

4  guilty.  Since we had the hearing in front of Judge

5  Waxse back in December, he's met all the conditions of

6  bond.  My understanding is that he is -- he did miss a

7  couple of appointments, mental health counselor

8  appointments in January.  That is because as today's

9  date approached, Channing I think became more and more

10  depressed, and indicated to me that when I met with him

11  last week in my office.  And so, I do have concerns

12  about that, Judge, and would ask that the court make the

13  appropriate finding and allow Mr. Burgess to remain out

14  on bond.

15           THE COURT:  Miss Martin?

16           MS. MARTIN:  Your Honor, I actually was

17  double checking, because had he pled guilty to Count 1,

18  I believe that is a mandatory detention case.  I don't

19  believe that Count 2 does require mandatory detention,

20  because it's 31 or 2252 A 4 B, and I think just A 1, 2,

21  and 3 require mandatory detention.  So, I don't think

22  that the court is required at this point to remand the

23  defendant to custody.  However, if the defendant is

24  suffering from some depression issues, it may be to his

25  benefit to be in custody where he can be monitored and

 1    looked after so he doesn't seek to harm himself.

 2              MR. HARRIS:  I've never felt incarceration

 3    is a cure for depression.  Mr. Burgess -- perhaps some

 4    of that was because I had advised him that there was a

 5    substantial likelihood that he would be taken into

 6    custody today.  I think up until that realization, he

 7    had been doing the things that the probation and

 8    pretrial service offices had requested, and we would ask

 9    the court to allow him to continue doing that until the

10    date of sentencing.

11              THE COURT:  What about that, about his

12    request that he be allowed to stay on his bond pending

13    his sentencing date?

14              MS. MARTIN:  Your Honor, there were some

15    issues early on.  I think those were resolved.  The

16    government's concern at this point, because these cases

17    in my experience carry a higher risk of suicide, I think

18    that it's something that the government is concerned

19    about in these cases, and if the defendant really is

20    having some excessive depression issues, it would not

21    be -- it would be of benefit that he could be observed

22    in custody.  And that's the only -- the only reason the

23    government would request that the defendant be remanded

24    at this time.

25              MR. HARRIS:  Depression because of pending

1    jail sentence does not al-- does not inevitably lead to
2    suicide.  I've had many, many conversations with
3    Channing and Channing's family, because probably about a
4    year ago, I had a client who committed suicide in
5    advance of a plea in an interstate travel case.  But
6    that's the only one of those that I have experienced,
7    and I have talked with Channing, that if he was
8    developing any kind of depressive thoughts towards like
9    self-destructive behavior, or if the family noticed
10   anything, to give me immediate notification so that in
11   conjunction with the pretrial services office, we could
12   get the appropriate intervention and make sure that
13   Mr. Burgess didn't do anything self-destructive, and I
14   have emphasized to Channing that no matter how difficult
15   he views his present circumstance, that there will be an
16   end to this episode, and he will be able to get on with
17   his life in a more normal fashion.  So, I have not had
18   any concerns of suicide ideation with Channing.  I think
19   for someone with Channing's position, who's young, who's
20   never been in trouble before, facing a prison sentence,
21   I -- I would think that that would be a sign of pretty
22   good mental health.  If that wasn't -- if somebody
23   wasn't depressed about that, I would be worried about
24   him.  I think that Channing would be able to comply with
25   the conditions of release through the date of

1    sentencing.  We would ask the court to allow him to do

2    that.

3                THE COURT:  Give me one moment, please.

4                (Whereupon court took a recess.  Proceedings

5                then continued as follows:)

6                THE COURT:  Court took a recess on the bench

7    here to speak with Ruth Moritz who is the pretrial

8    service officer present in the courtroom.  The court had

9    been given a release status report regarding Mr. Burgess

10   which I had reviewed, and it's been reviewed because of

11   this issue about whether or not, Mr. Burgess, to allow

12   you to stay out on this bond or to order that you be

13   placed in custody.  I'll go by what the government has

14   said at this point that this is not a mandatory

15   detention case.  I don't have any information contrary

16   to that.  Mr. Burgess, I have some concerns about you

17   based on this status report as to whether or not you're

18   able or willing to follow through with all your

19   conditions of release.  In this report, there's some

20   information contained in the report that might be

21   indicating that you're not obeying what the court has

22   told you not to do on the computer as it relates to

23   these sites that you're not supposed to be visiting.  Do

24   you understand that?

25                THE DEFENDANT:  Yes, sir.

1          THE COURT:  There's also some concern about

2    the fact that you haven't been attending your mental

3    health counseling.  I understand what Mr. Harris has

4    said on your behalf, but that really applies to anyone

5    coming to this court awaiting a sentence, that it's

6    going to cause some anxiety and some feelings that are

7    probably not very positive.  That does not excuse anyone

8    who's on a bond from not following through with the

9    conditions as it relates to your mental health

10   treatment.  Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  In the status report, it

13   indicates that you had previously appeared before Judge

14   Waxse, and that after that hearing, Judge Waxse found

15   that you should be allowed to continue on your --

16   your -- your bond.  There may have been some additional

17   conditions or some monitoring of your computer.  You've

18   pled guilty.  The court's found you guilty of this

19   offense.  Court set your sentencing for May 4th of 2009.

20   I have a couple questions for you.  First of all, is

21   there any reason for this court to believe that you

22   won't show up on May 4th on your own?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Is there any reason for this

25   court to believe that you won't follow through with

1    these conditions of your pretrial bond that had been

2    imposed?

3              THE DEFENDANT:  No, sir.

4              THE COURT:  I still have some concerns.

5    What I'll do is I'll actually allow you to stay on this

6    bond, but the court is going to set this over for a

7    hearing in a month's time in front of Judge Waxse in

8    which time the court's requesting that there be a status

9    report given to the court regarding your compliance with

10   these conditions.  And it would appear to be very

11   simple, Mr. Burgess.  You have to follow through with

12   the conditions as it relates to the usage of that

13   computer.  Do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Now, do you understand that if

16   it's shown that somehow, some way, that's not taking

17   place, the court's going to place you in custody at that

18   time?  Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Same thing as it relates to your

21   mental health counseling that you're supposed to be

22   undergoing.  Do you understand that is a condition of

23   your bond?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Your failure to comply with that

1   condition of your bond would also be a reason for the

2   court to place you immediately in custody on your next

3   court date.  Do you understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  As I said, I don't know Judge

6   Waxse's schedule, but I am recommending that that take

7   place within 30 days.  If there's nothing else?

8              MR. HARRIS:  Just as a point of

9   clarification, Judge, do you want us present in front of

10  Judge Waxse at the appointed time, regardless of any

11  report from the pretrial services office.

12             THE COURT:  Yes.  Yes.  30 days, there will

13  be a hearing in front of Judge Waxse.

14             MR. HARRIS:  We'll get that information from

15  Miss Lopez then, and I will provide that to Mr. Burgess.

16             THE COURT:  As far as the exact court date,

17  yes, date and time, but whatever it is, Mr. Burgess, you

18  need to make sure you're there.  Do you understand?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  If there's nothing else from

21  counsel?

22             MS. MARTIN:  No, Your Honor.

23             THE COURT:  If there's nothing else, this

24  hearing's adjourned.  Thank you.

25             (Whereupon court took a recess.  Proceedings

1          then continued as follows:)

2

3

4                    C E R T I F I C A T E

5

6

7      I, Nancy Moroney Wiss, a Certified Shorthand Reporter

8    and the regularly appointed, qualified and acting

9    official reporter of the United States District Court

10   for the District of Kansas, do hereby certify that as

11   such official reporter, I was present at and reported in

12   machine shorthand the above and foregoing proceedings.

13      I further certify that the foregoing transcript,

14   consisting of 35 typewritten pages, is a full, true, and

15   correct reproduction of my shorthand notes as reflected

16   by this transcript.

17      SIGNED May 29, 2009.

18

19                    S/_____

20                    Nancy Moroney Wiss, CSR, CM, FCRR

21

22

23

24

25